Dr. Richard F. DOMINGUEZ,
Plaintiff-Appellant,

v.

Henry A. BABCOCK; Joan N. Brooks; C. Richard Groves; Scott J. Marshall; Deborah A. Carnell; Richard S. Culver; Robert R. Faddick; Richard D. Gauthier; Mark W. Ljungvall; Dale Foreman; Robert J. Taylor; Harry C. Peterson; Karl R. Nelson; Gabriel M. Neunzert; James W. Martin; James G. Johnstone; Fred R. Leffler; Dr. William Mueller; Harry W. Emrick; the Colorado School of Mines, Defendants-Appellees.

No. 82CA0856.

Colorado Court of Appeals,
Div. I.

Aug. 16, 1984.

Rehearing Denied Sept. 6, 1984.

Certiorari Granted Feb. 4, 1985.

Greengard, Blackman & Senter, James E. Goldfarb, Denver, for plaintiff-appellant.

Hall & Evans, P.C., Daniel R. Satriana, Jr., Denver, for defendants-appellees.

Hall & Evans, P.C., John P. Mitzner, Denver, for defendant-appellee Harry W. Emrick.

TURSI, Judge.

Dr. Richard F. Dominguez, plaintiff, appeals the trial court's entry of summary judgment in favor of all defendants on all his claims for relief. We affirm.

In June 1979, plaintiff entered into a contract with defendant Colorado School of Mines (CSM) for employment as a full professor and head of the Basic Engineering Department (Department) for the 1979–80 school year. In 1980, an identical contract was executed for the 1980–81 school year. Plaintiff was hired on a probationary basis for both years. The employment contracts expressly incorporated all provisions, terms, and conditions of the CSM faculty handbook in force at the time the contracts were executed.

On August 25, 1980, certain faculty members of the Department, named as defendants, prepared and submitted to defendant Mueller, Vice President of Academic Affairs, a document which contained allegations of impropriety on plaintiff's part. The document concluded with a request for removal of plaintiff as head of the Department. Later that day, Mueller met with plaintiff and discussed the allegations made in the document. In response,

plaintiff denounced the allegations and submitted a written memorandum dated August 26, 1980. One of the written responses to the several allegations contained in the August 25 memorandum, was:

> "The charge ... is a reckless, libelous statement made without substantiation and requires either accountability by those who made it or retraction."

Pursuant to plaintiff's memorandum, Mueller requested the faculty to substantiate their allegations. On September 4, 1980, the faculty submitted to Mueller a second document containing a detailed explanation of their position and additional allegations. Plaintiff did not learn of this second document until February 1981.

On September 9, 1980, after several meetings with Mueller and defendant McBride, president of CSM, plaintiff resigned as head of the Department, but continued in his capacity as professor.

In October 1980, plaintiff met with several of the Department faculty, at which time defendant Emrick, new head of the Department, requested that plaintiff increase his teaching case load to the level normal for Department faculty. Plaintiff refused. Similar requests in January 1981 were also rejected by plaintiff.

On February 6, 1981, upon recommendation of the Department, Mueller gave plaintiff written notice of nonrenewal of his employment contract, effective at the end of the school year. The stated reason for nonrenewal was "considerable friction" between plaintiff and other members of the Department faculty. On March 24, 1981, a Faculty Review Committee held a preliminary meeting for the purpose of determining whether plaintiff was entitled to a hearing on the merits concerning the nonrenewal of his contract. The Committee concluded that such a hearing was not required. On June 5, 1981, plaintiff filed notice of claims pursuant to § 24–10–109, C.R.S. (1982 Repl.Vol. 10). The instant action against the faculty members, the administration, and the school was commenced on August 10, 1981.

In his complaint, plaintiff sought recovery on the theories of defamation, negligence, outrageous conduct, breach of contract, violation of his civil rights as protected by 42 U.S.C. § 1983, and conspiracy to violate his civil rights under 42 U.S.C. § 1985. Plaintiff voluntarily dismissed his 42 U.S.C. § 1985 claim.

Defendants answered with a general denial of the material allegations of the complaint and interposed several affirmative defenses. Subsequently, defendants moved for summary judgment on all of plaintiff's claims for relief. Plaintiff moved for partial summary judgment on the claims of breach of contract and violation of his civil rights under 42 U.S.C. § 1983. In a written order, the trial court denied plaintiff's motion for partial summary judgment, and granted summary judgment to defendants on all of plaintiff's claims.

Plaintiff does not dispute that the August 25 and September 4 documents prepared by the defendant faculty are subject to a qualified privilege. *See Coopersmith v. Williams*, 171 Colo. 511, 468 P.2d 739 (1970). However, he contends that the trial court erred in granting summary judgment on the August 25 document based on his failure to comply timely with the notice requirements of § 24–10–109, C.R.S. (1982 Repl.Vol. 10). Further, plaintiff contends that the trial court erroneously concluded, as a matter of law, that the September 4 document was subject to an absolute privilege. We disagree with the former contention, but agree in part with the latter.

I

The Colorado Governmental Immunity Act requires a claimant to provide the public entity with written notice of claims within 180 days after the date of the discovery of the injury. Section 24–10–109(1), C.R.S. (1982 Repl.Vol. 10). Such notice is also a condition precedent to an action against public employees for acts or omissions arising within the scope of their employment, § 24–10–118, C.R.S. (1982 Repl.Vol. 10), even if the public entity may

not be subject to liability. *See Gray v. City of Manitou Springs,* 43 Colo.App. 60, 598 P.2d 527 (1979). The date of discovery of the injury implicitly encompasses the discovery of the basis of the claim. *Carroll v. Regional Transportation District,* 638 P.2d 816 (Colo.App.1981).

■ Here, plaintiff discovered the basis of the claim on August 25, 1980, when Mueller presented him with the August 25, 1980, document. Based on his written response to the document, it is clear that he immediately realized its defamatory nature. Publication of the defamatory statements was effected when the document was forwarded to Mueller. Thus, both the injury and the basis of the claim were discovered by plaintiff on August 25, 1980. Accordingly, the June 5, 1981, notice of claims was untimely as to the August 25, 1980, document thereby barring any claim based thereon. *Roberts v. City of Boulder,* 197 Colo. 97, 589 P.2d 934 (1979). However, notice was timely filed as to the September 4, 1980 document, because plaintiff did not learn of its existence until February 1981. *Young v. State,* 642 P.2d 18 (Colo.App. 1981), *aff'd,* 665 P.2d 108 (Colo.1983).

In regard to the September 4, 1980, document, the trial court granted summary judgment in favor of defendants on the ground that plaintiff had requested its preparation, thereby forming an absolute defense to any defamation claim. The trial court concluded that plaintiff had consented to, or requested, the preparation of the September 4 document when in his August 26 written response to the earlier document, he requested that the faculty be held accountable for their actions.

■ A motion for summary judgment is properly granted if the evidence establishes no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Abrahamsen v. Mountain States Telephone & Telegraph Co.,* 177 Colo. 422, 494 P.2d 1287 (1972). All doubts must be resolved against the moving party. *Roderick v.*

*City of Colorado Springs,* 193 Colo. 104, 563 P.2d 3 (1977).

In his deposition, Mueller stated:

"As I recall, in the discussions Dr. Dominguez and I had, he said—he suggested that these individuals should be accountable for these statements and should have to back them up with facts, more factual information. I indicated I agreed and instructed those individuals to—that this was necessary, that they provide more definitive and specific information about the allegations."

In granting summary judgment to defendants, the trial court relied on *Costa v. Smith,* 43 Colo.App. 251, 601 P.2d 661 (1979). In *Costa,* we adopted *Restatement (Second) of Torts* § 583 (1977), which provides:

"Except as stated in § 584, the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation."

However, *Costa* did not implicate *Restatement (Second) of Torts* § 584 (1977), which provides:

"An honest inquiry or investigation by the person defamed to ascertain the existence, source, content or meaning of a defamatory publication is not a defense to an action for its republication by the defamer."

■ Thus, if a person requests, or consents to, publication of a matter which is defamatory, the resulting defamation is subject to an absolute privilege. *Restatement (Second) of Torts* § 583 comment d, Illustration 2 (1977). However, this is to be distinguished from situations in which the person defamed honestly investigates the existence, source, content, or meaning of an existing defamatory publication. In such situations, the resulting defamation is not absolutely privileged. *Lee v. Paulsen,* 273 Or. 103, 539 P.2d 1079 (1975). The person defamed may ascertain or verify facts of a prior defamatory publication, without being deemed to have consented to the republication. The investigation or inquiry, however, may not be for the purpose of inviting republication in order to decoy

the publisher into a law suit. *Restatement (Second) of Torts* § 584 comment d (1977).

Although we agree with plaintiff that there is a genuine factual issue as to whether plaintiff's request for accountability or retraction constitutes consent to the September 4 document, we also agree with defendants that their motion for summary judgment should have been granted because plaintiff failed to present any evidence which would sustain a factual finding that defendants had abused their qualified privilege.

At the summary judgment stage of the proceedings, it was necessary for plaintiff to establish a prima facie case of defamation. *DiLeo v. Koltnow*, 200 Colo. 119, 613 P.2d 318 (1980). Since the alleged defamatory matter here is admittedly qualifiedly privileged, plaintiff, to defeat the summary judgment motion, was required to show a genuine factual issue as to the existence of actual malice. *Fort Collins Motor Homes, Inc. v. Fort Collins*, 30 Colo.App. 445, 496 P.2d 1074 (1972). His failure to do so renders summary judgment for defendants appropriate. *DiLeo v. Koltnow, supra*. *See also Russell v. McMillen*, 685 P.2d 255 (Colo.App.1984). Therefore, although on different grounds, we affirm the entry of summary judgment in favor of defendants as it relates to the September 4 document.

## II

Plaintiff contends that the trial court erred in granting summary judgment in favor of defendants on his negligence claim on the basis that the September 4, 1980, document is subject to a qualified privilege. This contention is without merit since plaintiff concedes that a qualified privilege is attached to this document. Where a communication has been determined to be subject to a qualified privilege, the burden is on the plaintiff to prove that the defamatory statements were made with actual malice. *Denver Public Warehouse Co. v. Holloway*, 34 Colo. 432, 83 P. 131 (1905).

Here, plaintiff relied on the failure to investigate or mere negligence on the part of the publisher. This, without more, does not constitute actual malice. *See Walker v. Colorado Springs Sun, Inc.*, 188 Colo. 86, 538 P.2d 450 (1975). Thus, plaintiff's claim for relief based on allegations of negligence was properly dismissed.

## III

Plaintiff also argues that the trial court erred in granting summary judgment in favor of defendants on his claim pursuant to 42 U.S.C. § 1983. Plaintiff asserts that defendants failed to comply with nonrenewal procedures prescribed by the faculty handbook and incorporated into his employment contract, thereby depriving him of due process of law.

In order to state a claim for relief pursuant to 42 U.S.C. § 1983, the claimant must establish the existence of a constitutionally protected property or liberty interest. *University of Colorado v. Silverman*, 192 Colo. 75, 555 P.2d 1155 (1976).

Here, plaintiff was hired for two one-year terms on a probationary basis as a non-tenured employee. Prior to entering into a contract for the 1980–81 school year, the faculty handbook was amended to require the completion of three years employment prior to receiving tenure. Plaintiff received notice of nonrenewal midway through his second year of employment. Plaintiff neither had tenure, nor a reasonable expectation of continued employment. Therefore, plaintiff had no property interest in employment at CSM. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *See Milan v. Aims Junior College District*, 623 P.2d 65 (Colo. App.1980). Nor has plaintiff suffered a deprivation of a liberty interest.

The circumstances surrounding plaintiff's nonrenewal did not have a stigmatizing effect so as to foreclose future employment opportunities. *See Board of Regents v. Roth, supra*. *Weathers v. West Yuma County School District*, 530 F.2d 1335 (10th Cir.1976). The reason for plain-

 

tiff's nonrenewal, which was disharmony with Department faculty, was kept confidential among interested parties. There was no public dissemination of disparaging information. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *McGhee v. Draper,* 639 F.2d 639 (10th Cir. 1981). The fact that nonrenewal may have made plaintiff "less attractive" in the employment sense, without more, does not constitute a deprivation of liberty. *Board of Regents v. Roth, supra.*

Therefore, as neither a property interest nor a liberty interest was affected by plaintiff's nonrenewal of employment, his 42 U.S.C. § 1983 claim based on noncompliance with nonrenewal procedures is not entitled to consideration. *Weathers v. West Yuma County School District, supra. See Milan v. Aims Junior College District, supra.* The trial court, therefore, correctly granted summary judgment on the 42 U.S.C. § 1983 claim in favor of defendants.

Plaintiff's remaining contentions are without merit.

Judgment affirmed.

PIERCE and BABCOCK, JJ., concur.