SMILEY'S TOO, INC., d/b/a Smiley's Coin Laundry and Dry Cleaners, a Colorado corporation; and Colfax Avenue Irrevocable Trust, d/b/a Smiley's Laundromat and Cleaners, Plaintiffs–Appellants,

v.

The DENVER POST CORPORATION, a Colorado corporation, and Chance Conner, Defendants–Appellees.

No. 95CA0282.

Colorado Court of Appeals, Div. IV.

June 27, 1996.

Rehearing Denied Aug. 8, 1996.

Certiorari Denied March 17, 1997.

Podoll & Podoll, P.C., Richard B. Podoll, John J. Eberle, Denver, for Plaintiffs–Appellants.

Faegre & Benson, P.L.L.P., Thomas B. Kelley, Bret R. Gunnell, Denver, for Defendants–Appellees.

Opinion by Judge ROTHENBERG.

Plaintiffs, Smiley's Too, Inc. and Colfax Avenue Irrevocable Trust, appeal from a judgment entered on a jury verdict in favor of defendants, The Denver Post Corporation and reporter Chance Conner. We affirm.

Both plaintiffs (collectively Smiley's) are organizations controlled by Arthur Cormier and hold themselves out to the public as a single laundromat and dry cleaning business.

On June 1, 1992, the Denver Post republished an article from *Money Magazine* about trends in the dry cleaning business, including rising prices and increasing customer complaints. As a local sidebar to the main story, Denver Post reporter Chance Conner investigated Denver area dry cleaners.

Conner contacted the Consumer Fraud Division of the Denver District Attorney's Office and discovered that numerous complaints had been filed concerning Smiley's. Complaining customers reported not only the loss, misplacement, or damage of their clothing, but also rude and belligerent treatment by the management of Smiley's. The District Attorney's investigator who maintained the file on Smiley's confirmed that the dry cleaner generally refused to settle claims responsibly, and often "stonewalled" both customers and the Consumer Fraud Division's efforts to mediate disputes.

Conner studied the District Attorney's file of complaints and interviewed the investigator, customers, representatives of Smiley's, and a representative of the Professional Cleaners and Laundry Association. Conner's article described specific complaints and quoted the Consumer Fraud Division and trade association representatives as confirming the nature and extent of the complaints against Smiley's, particularly when compared to other similar dry cleaning establishments. Although the article did quote the claim by the management of Smiley's that it had made good faith efforts to resolve all problems and take responsibility for those cases where Smiley's was at fault, the article included a significant number of statements highly critical of Smiley's.

Smiley's filed this action against the Denver Post and Conner for defamation. The trial court initially ruled that the article involved a matter of public concern. Based upon that determination, it then instructed the jury that, to find defendants liable, the article must have been published with at least reckless disregard for the truth. It also instructed the jury on the official reports doctrine which creates a privilege for fair and accurate reports of matters contained in official records.

The jury found that: (1) the article was substantially true; (2) it was not reported with reckless disregard for the truth; and (3) it was a fair and accurate report of the Consumer Fraud Division's public records. It therefore returned a verdict for the defendants and judgment was entered accordingly.

## I.

We first consider and reject Smiley's contention that the published article was not a matter of public concern.

■ At common law, the tort of defamation existed to redress and compensate individuals who suffered serious harm to their reputations due to the careless or malicious communications of others. *Keohane v. Stewart*, 882 P.2d 1293 (Colo.1994). The common law tort only requires a plaintiff to prove defendant's publication of a defamatory statement by a preponderance of the evi-

dence. The defendant then may prove truth as an affirmative defense. *Williams v. Burns*, 540 F.Supp. 1243 (D.Colo.1982).

■ In contrast, if a public figure or a matter of public concern is involved, a heightened burden applies and plaintiff is required to prove the article's falsity by clear and convincing evidence rather than by a preponderance. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986); *Diversified Management v. Denver Post*, 653 P.2d 1103 (Colo. 1982).

This is so because reporting about public figures or matters of public concern triggers certain constitutional privileges. In such cases, the United States Supreme Court has recognized the competing interest between the protection of reputation and the press' ability to engage in uninhibited, robust, and wide open debate on public issues. *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Diversified Management v. Denver Post*, supra (First Amendment and Colo. Const. art. II, § 10 require application of the heightened standard of proof).

■ Whether an allegedly defamatory statement is constitutionally privileged is a question of law which is reviewed de novo. *NBC Subsidiary v. Living Will Center*, 879 P.2d 6 (Colo.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 1355, 131 L.Ed.2d 214 (1995).

■ The mere fact that the press is attracted to a particular person or activity does not make that person a public figure or that activity a matter of public concern. *Diversified Management v. Denver Post*, supra; *Saro Corp. v. Waterman Broadcasting Corp.*, 595 So.2d 87, 89 (Fla.App.1992) (where media defendant created controversy, transmission repair shop accused of recommending unnecessary repairs held to be a "private claimant").

■ Here, the parties agree that the trial court's determination whether the subject matter was of public concern affected the nature of the jury instructions and thus may have influenced the verdict entered. Their disagreement is over whether the article in-

volved a matter of public concern. Smiley's contends that, because the article concerned only a handful of complaints against a high volume dry cleaner over a number of years, such matters are too trivial to trigger the public's concern. We are not persuaded.

■ The boundaries of public concern cannot be readily defined, but must be determined on a case by case basis. Generally, a matter is of public concern whenever "it embraces an issue about which information is needed or is appropriate." *Lewis v. McGraw–Hill Broadcasting Co.*, 832 P.2d 1118, 1121 (Colo.App.1992) (citing *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)); *see also Diversified Management, Inc. v. Denver Post, supra* (newspaper articles concerning widespread and ongoing land-development schemes of questionable propriety involved matters of public concern); *see generally* T. Bateman, *Who is "Public Figure" for Purposes of Defamation Action*, 19 A.L.R. 5th 1 (1994).

Although the article here mentioned only a few complaints against Smiley's, evidence at trial nevertheless established that there were numerous other complaints, especially when compared to other similar cleaning establishments. Further, the complaints concerned more than the mere mix-up or misplacement of clothing, but often related lengthy allegations by irate customers that they had been given the brush-off by the management of Smiley's. In fact, the investigator for the District Attorney's Consumer Fraud Division considered the complaints serious enough to pursue an investigation of the business.

We therefore conclude that, where as here, the article affected many consumers and involved a consumer affairs agency, it presented an issue about which the public had a legitimate need for information. *See Brueggemeyer v. American Broadcasting Cos.*, 684 F.Supp. 452, 458 (N.D.Tex.1988) (where plaintiff's sales practices "generated consumer complaints, government legal actions, [Better Business Bureau] investigations, and media attention," defendant's reporting was on a matter of public concern, triggering heightened constitutional protections); *Lewis v. McGraw–Hill Broadcasting Co., supra.*

Accordingly, the trial court did not err in instructing the jury concerning the burden and standards of proof in this case.

## II.

Smiley's next asserts that the trial court erred in its instructions concerning falsity. We perceive no basis for relief.

Smiley's tendered the standard jury instruction on falsity, as set out in *CJI–Civ.3d* 22:10A (1989), which explained that "a statement is false if its substance or gist is contrary to the true facts," and if the statement would likely cause the reader to "think significantly differently about the person" referred to if he or she knew the facts. The instruction thus required the defamatory statement to be false, and required the falsity to be non-trivial.

The court also gave the following carrying instruction tendered by defendants:

> In order for the plaintiff ... to recover ... you must find that ... [t]he substance or gist of the statement was false at the time the article was published, and the falsity was such that the article as a whole would produce a *materially more damaging effect* upon the reader than the truth of the matter. (emphasis added)

Smiley's argues that the emphasized clause is not a proper statement of Colorado's law of defamation, and thus, by submitting the instruction to the jury, the trial court committed reversible error. However, the record shows that Smiley's did not object to the language at issue, and Smiley's does not explain on appeal how the above language departs from the law of defamation in Colorado.

■ Alleged errors in jury instructions must be brought to the attention of the trial court with a timely and specific objection or they are waived. *Gorsich v. Double B Trading Co.*, 893 P.2d 1357 (Colo.App.1994). By failing to lodge any objection to the above language, Smiley's has failed to preserve the issue for appeal.

## III.

Smiley's next argues that the trial court erred in instructing the jury concerning reck-

less disregard of the truth. In a related contention, Smiley's also argues that it must be granted a new trial because copies of its tendered instructions on reckless disregard were inadvertently misplaced and are not included in the record.

The instructions on reckless disregard would affect the outcome only if the jury had found that the article was false—then the constitutional question would be whether the defendants published it with knowledge of its falsity or with reckless disregard for whether it was true or false. *New York Times v. Sullivan, supra.*

◼ Since the jury found the article was substantially true, a finding which Smiley's does not contest on appeal, its arguments regarding reckless disregard are moot. The jury found no falsity, and reporting the truth is not a tort.

◼ Similarly, there is no need to address the applicability of the official reports doctrine or privilege. That defense is relevant only if the jury found falsity and the other elements of defamation. Such did not occur here.

### IV.

Finally, Smiley's asserts that it was surprised and prejudiced by the defendants' tactic of designating hundreds of witnesses in their disclosure certificate, and that this constituted a procedural irregularity which mandates a new trial under C.R.C.P. 59(d)(1). We disagree that reversal is required on this basis.

◼ The record shows that defendants did originally file a disclosure certificate listing about 350 potential witnesses, the majority of whom were former retail customers of Smiley's who were known to Smiley's because they had complained about lost clothing. Eight months before trial, defendants narrowed this list to 33 nonparty witnesses. Thus, the claim of Smiley's that it was deluged with hundreds of potential witnesses is refuted by the record. In fact, defendants' final trial witness list was proportional to that of Smiley's and was further limited at the trial court's request.

Further, all of defendants' witnesses were drawn from their supplemental disclosure certificate except one. Smiley's singles out that witness' testimony as surprising, but the record shows that during depositions Smiley's was made aware of the nature of the witness' potential testimony.

Smiley's asserts that it was surprised by the testimony of only one other witness. Again, however, the record shows that Smiley's contacted and interviewed that witness before the trial, and had the opportunity to question the witness about potential testimony.

Since the contention of Smiley's that it was unfairly surprised by these witnesses' testimony in violation of C.R.C.P. 16 is belied by the record, the trial court's refusal to grant a new trial on this basis was not an abuse of discretion. *See First National Bank v. Campbell,* 198 Colo. 344, 599 P.2d 915 (1979) (trial court has broad discretion in considering motion for new trial).

The judgment is affirmed.

DAVIDSON and TAUBMAN, JJ., concur.