Bruce P. **WILLIAMS**, Plaintiff–Appellee and Cross–Appellant,

v.

**CONTINENTAL AIRLINES, INC.,** a corporation; **Danielle Ames; Sandra Chamberlain;** and **Judith Richards,** Defendants–Appellants and Cross–Appellees.

No. 95CA0469.

Colorado Court of Appeals, Div. I.

Sept. 5, 1996.

Rehearing Denied Oct. 24, 1996.

Certiorari Denied Aug. 18, 1997.

Shannon A. Robinson, P.C., Shannon A. Robinson, Niwot, for Plaintiff–Appellee and Cross–Appellant.

Hall & Evans, L.L.C., Alan Epstein, Daniel R. Satriana, Jr., Marianne E. Pierce, Denver, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge CRISWELL.

Defendants, Continental Airlines, Inc. (Continental), and three of its employees—Danielle Ames, a flight attendant, and Sandra Chamberlain and Judith Richards, flight attendant supervisors—appeal from judgments for money damages against them and in favor of plaintiff, Bruce P. Williams, a pilot employed by Continental, and plaintiff cross-appeals from the trial court's reduction of the jury's damage award. The judgment against Ames was based upon her defamatory statements that plaintiff had attempted to rape her. The judgments against Continental and Richards were based upon allegations by plaintiff that there had been an insufficient and negligent internal investigation conduct-ed by Continental and its supervisors when Ames made her allegations against plaintiff. The judgment against Chamberlain was based both upon her defamation of plaintiff, as well as her asserted negligence in failing to report Ames' allegations to Continental on a timely basis. We affirm the judgments based on defamation, but reverse the judgments based upon an alleged negligent internal investigation by Continental and its supervisors. The reversal of those judgments renders plaintiff's cross-appeal moot.

The material evidence, considered by the jury in returning verdicts upon which the various judgments were based, disclosed the following:

In January 1991, plaintiff was the pilot on a crew consisting, among others, of Ames, another female flight attendant, and Chamberlain, the flight service manager. This crew was together for several days and flew to several destinations, including Newark, New Jersey, where they stayed overnight.

During the night of their stay in Newark, plaintiff and the other flight attendant engaged in sexual intercourse. Plaintiff testified that this occurred in his room, that it was consensual, and that he stayed in his room the remainder of the night. The other flight attendant would later assert that the intercourse had not been consensual and that plaintiff had raped her.

In addition, Ames would later claim that plaintiff had come into her hotel room and had sexually assaulted and attempted to rape her. Plaintiff denied this allegation, and there was substantial evidence presented that such an incident never occurred.

Approximately one week after the crew's return to Denver, Ames described plaintiff's alleged attempted rape of her to Chamberlain, the in-flight supervisor, and also told her that the other flight attendant had been raped by plaintiff. No formal report of either incident was made to Continental officials by anyone at that time.

Continental had adopted certain written policies and procedures with respect to the processing of employee complaints and grievances. Under these procedures, Chamberlain, the flight service manager, was required

to make a written report of the two complaints upon learning of them, even though Ames did not lodge any formal complaint. This she did not do.

In addition, Continental's written policies with respect to any claim of "sexual harassment" required that:

—any complaint be "investigated promptly, fairly and confidentially";

—the investigation be documented by taking written statements from witnesses, co-workers, and the alleged harasser; and

—all employees be treated fairly, equally, and consistently.

Some three months after the flight ended, Ames and the other flight attendant lodged a formal complaint against plaintiff with Continental. When told that, because of the seriousness of the charge, written statements were required of them, they did not prepare any statements until approximately one month later.

Richards, a personnel specialist, participated in the ensuing investigation and gave advice upon the matter to other supervisors. Chamberlain was required to submit a written statement describing her observations during the flight, in which she alleged that plaintiff always acted "openly sexually aggressive"; that he "boldly examines each woman in the terminal and in the boarding process"; and that, during the flight in question, he had selected the other flight attendant "as his target." Chamberlain concluded that, while she was not a witness to either of the alleged sexual incidents, there was "very little doubt" in her mind "that something like this occurred."

Upon receipt of these statements, Continental provided copies to plaintiff, and he was interviewed concerning the allegations. In addition, all other persons who were crew members were interviewed. These statements conflicted upon several relevant and important subjects with the statements of Ames, Chamberlain, and the other flight attendant.

Plaintiff was asked to undergo a fitness for duty examination, which he did. The following day, he was informed that he had passed "with flying colors" and that the investigation into the complaints against him had been "closed." Continental's employee in charge of the investigation testified that, because the results of the investigation had proven inconclusive, Continental had elected to take no disciplinary or other action against plaintiff; he continued in the same employment status with Continental as he had occupied before the complaints were made.

Plaintiff and other Continental employees testified that, commencing sometime after the end of the flight and continuing thereafter, knowledge of the allegations against plaintiff became known to many other Continental employees, with the result that many derogatory references were made about him, and on at least one occasion, a female flight attendant refused to fly as part of his crew. As noted below, there was some evidence that Ames and Chamberlain had orally repeated the allegations made by Ames and the other flight attendant to other Continental employees. There was also some evidence that some other lower supervisory personnel also disclosed the fact that such allegations had been made against plaintiff.

Based on the foregoing, plaintiff instituted suit against Continental and various of its employees, asserting multiple claims. Significant to the issues raised in this appeal, plaintiff asserted that Continental's written policies with respect to the investigation of claims of sexual harassment and other employee complaints constituted an implied contract with its employees, including plaintiff, which Continental violated by negligently failing to conduct a thorough or confidential investigation into the allegations against plaintiff and by not assuring that those allegations were not repeated by various of its employees. Alternatively, plaintiff alleged that Continental's conduct of the investigation constituted the tort of "negligence."

In addition, plaintiff asserted that Continental was liable, under the doctrine of *respondeat superior*, for the defamatory statements made by Ames, Chamberlain, and the other flight attendant, and allegedly made by other Continental employees and supervisors; that Continental negligently failed to supervise its employees properly, so as to prevent the defamatory statements from be-

ing repeated; and that Continental's failure properly to investigate the allegations made by Ames, Chamberlain, and the other flight attendant constituted sexual harassment under applicable federal laws and regulations.

Because plaintiff failed to establish any economic loss as a result of Continental's alleged contract breach, and because he failed to prove that any such alleged breach was either willful or wanton (thereby allowing the recovery of non-economic damages, *see McCreery v. Miller's Groceteria Co.,* 99 Colo. 499, 64 P.2d 803 (1936)), the trial court dismissed plaintiff's contract claim.

Likewise, before submitting the cause to the jury, the trial court dismissed all of the other claims asserted by plaintiff, except the claims for negligent investigation and defamation, which are the subjects of this appeal. Plaintiff has not appealed from the dismissal of any of these claims.

The jury returned a verdict for plaintiff and against Continental, Chamberlain, and Richards on the negligence claim, assessing some $640,000 damages against Continental, $40,000 against Chamberlain, and $1.00 against Richards. Acting pursuant to § 13–21–102.5, C.R.S. (1987 Repl.Vol. 6A), which places a limit upon awards for non-economic loss, the trial court reduced the damage award against Continental to $250,000.

In addition, the jury returned verdicts in plaintiff's favor and against Ames and Chamberlain on his claims for libel and slander, awarding him a total of $40,000 compensatory damages and $5,000 punitive damages against Chamberlain and $40,000 in compensatory damages against Ames.

It is from the judgments entered on these verdicts that defendants appeal.

## I.

█ Continental, Chamberlain, and Richards first argue that the trial court erred in recognizing and instructing the jurors upon a tort that may be described as "negligent investigation." We agree.

We first emphasize that the claim submitted to the jury here is not one based upon any statute or regulation; it is, rather, a claim allegedly grounded solely upon the common law. Further, it is not one based upon willful, wanton, reckless, or intentional conduct. Plaintiff's submission is that he is entitled to recover damages based upon his employer's and his co-employees' simple negligence.

Moreover, plaintiff does not assert that *every* employer is under a duty to investigate, much less to use due care in doing so, every complaint made by one co-employee against another. However, he asserts that, here, because Continental has adopted written policies calling for the investigation of claims of sexual harassment, it and its employees assumed a *non-contractual* duty, enforceable in tort, to use due care in conducting such an investigation.

Several courts have rejected this notion. They have concluded that the purpose of an internal investigation of an employee's claim of sexual harassment by another employee is either for the sole benefit of the employer itself or for the benefit of the person making the charge; in either event, there is no duty of due care owed to the party against whom the charges are asserted. *See Martin v. Baer,* 928 F.2d 1067 (11th Cir.1991). *Cf. Connes v. Molalla Transport System, Inc.,* 831 P.2d 1316 (Colo.1992) (recognizing tort of negligent hiring, but holding that employer owes no duty to third party to investigate non-driving criminal record of truck-driver, who has only minimal contact with public).

In one state, certain court rulings initially indicated that an employee's claim for wrongful discharge, based upon the violation of the covenant of good faith, may arise from a negligent internal investigation. *Flanigan v. Prudential Federal Savings & Loan Ass'n,* 221 Mont. 419, 720 P.2d 257 (1986); *Crenshaw v. Bozeman Deaconess Hospital,* 213 Mont. 488, 693 P.2d 487 (1984). Later opinions have made clear, however, that, even in that jurisdiction, the breach of the covenant of good faith "considers the intentional conduct of an employer," and that there is no "duty to use reasonable care in decision-making, based upon a theory of negligence." *Heltborg v. Modern Machinery,* 244 Mont. 24, 36, 795 P.2d 954, 961 (1990).

Even if we were to assume that an employer's adoption of a procedure for the investigation of complaints of one employee against another imposes the duty upon that employer to use due care in that investigation, so that a violation of such duty would give rise to a contract or promissory estoppel claim under *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987), we would, nevertheless, still conclude that a *tort* claim, based upon the violation of that duty, should not be recognized, at least not under the circumstances presented by this record.

Plaintiff seeks to recover non-economic damages resulting from injury to his reputation and for his mental and emotional suffering. Yet, based upon the facts here, to recover for such damages under any traditionally-recognized claim for relief, plaintiff would have to prove that Continental and its employees engaged in conduct substantially more egregious than simple negligence.

■ Generally, simple negligence cannot provide the basis for the recovery of damages for mental or emotional suffering, unless such negligence has resulted either in physical injury or in the creation of a reasonable risk of bodily harm. It is only if the conduct can be determined to be wilful or wanton that the recovery of such damages is otherwise authorized. *Towns v. Anderson,* 195 Colo. 517, 579 P.2d 1163 (1978); *see Culpepper v. Pearl Street Building, Inc.,* 877 P.2d 877 (Colo.1994).

■ Hence, such damages are not recoverable under a claim for contract breach, unless the evidence demonstrates that there was "an intentional breach, involving willful, wanton or insulting conduct and without any legal justification or excuse." *Smith v. Hoyer,* 697 P.2d 761, 764 (Colo.App.1984).

■ Likewise, if, as here, a qualified privilege exists, mere negligence cannot supply the malice requirement for a defamation claim. *Dominguez v. Babcock,* 696 P.2d 338 (Colo.App.1984), *aff'd,* 727 P.2d 362 (Colo. 1986) (mere negligent failure of employer to investigate cannot constitute actual malice for defamation claim).

Finally, here, there was insufficient evidence adduced to hold Continental liable for the various defamatory statements, either under *respondeat superior* or under a claim of inadequate supervision. As noted, all of these traditionally recognized claims were dismissed by the trial court, and plaintiff does not assert that it committed error in doing so.

If the tort of "negligent investigation" were to be recognized in these circumstances, therefore, we would allow a plaintiff to recover non-economic damages for mental and emotional suffering based upon mere negligent conduct, although the common law has traditionally required more culpability. This we decline to do, and in doing so, we join the substantial majority of other courts to which this or a similar issue has been presented. *See Martin v. Baer, supra; O'Connell v. Bank of Boston,* 37 Mass.App. Ct. 416, 420, 640 N.E.2d 513, 516 (1994) ("The individual falsely accused is thus not remediless, but negligence alone does not make his or her accuser liable."); *Lambert v. Morehouse,* 68 Wash.App. 500, 843 P.2d 1116 (1993) (with possible exception of Montana, courts have uniformly rejected claim based upon negligent investigation in employment contexts); *Vackar v. Package Machinery Co.,* 841 F.Supp. 310, 315 (N.D.Cal.1993) ("California courts have held that plaintiffs may not avoid the strictures of defamation law by artfully pleading their defamation claims to sound in other areas of tort law.").

We conclude, therefore, that, given the circumstances presented by this record, no cause of action lying in tort could be asserted against any of the defendants, based only upon their alleged negligence in conducting the internal investigation. If they could not be held liable either for defamation or for contract breach, they could not be held liable for simple negligence. Hence, the trial court erred in allowing the jury to pass upon this claim, and the judgment based on that claim must be reversed.

## II.

Ames and Chamberlain also contend that the court erred in denying their motion for judgment notwithstanding the verdict as to the slander verdicts against them because

there was insufficient evidence that they had made oral defamatory statements to third parties about plaintiff. We disagree.

■ A judgment notwithstanding the verdict can be entered only if the evidence, when viewed in a light most favorable to the non-moving party, is such that no reasonable person could reach the same conclusion as the jury. *Smith v. City & County of Denver*, 726 P.2d 1125 (Colo.1986).

■ Here, Ames testified that she told various people that plaintiff had broken into her hotel room and attempted to have sexual relations with her against her will. Hence, there was ample evidence to support the slander verdict against her.

■ As to Chamberlain, she testified that she had spoken with a co-worker "about the allegations in this case." Chamberlain's written statement about the incident, in which she repeated Ames' allegations and further stated her belief that the events described by Ames had, in fact, occurred, was also in evidence.

Given this evidence, the jury could reasonably have inferred that the "allegations" about which Chamberlain told her co-worker were those described in her written statement. This evidence, therefore, was sufficient to support the jury verdict against her on the slander claim.

■ Moreover, it is of no consequence that Chamberlain's discussions with her co-worker may have occurred after the commencement of this action. While that might mean that the original allegation of slander was not then evidentially supported, that would not invalidate the slander verdict. As of the time of trial, the evidence presented supported that claim.

### III.

■ Ames and Chamberlain next contend that, as to the defamation counts, the trial court erroneously instructed the jury that any defamatory statements were subject to a qualified privilege. Specifically, they argue that the statements at issue involved a matter of public concern and that the jury should

have been instructed accordingly. We disagree.

■ A distinction exists between allegedly defamatory statements involving a matter of public concern and those that are purely private in nature. *Lewis v. McGraw–Hill Broadcasting Co.*, 832 P.2d 1118 (Colo.App. 1992). As to matters of public concern, which are afforded the comprehensive protection of the First Amendment, a heightened burden applies, and a plaintiff is required to prove the statement's falsity by clear and convincing evidence, rather than by a mere preponderance. *Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103 (Colo.1982); *Smiley's Too, Inc. v. Denver Post, Corp.*, 935 P.2d 39 (Colo.App. 1996); compare CJI–Civ.3d 22:1, 22:2, 22:3 & 22:4 (1989)(instructions for defamation claims concerning matters of public concern or where plaintiff is a public official or person) *with* CJI–Civ.3d 22:5, 22:6 & 22:16 (1989)(instructions in a private matter where plaintiff is a private person).

Ames and Chamberlain argue that their statements impacted the safety of the flying public and, thus, involved a matter of public concern. We are unconvinced.

■ The question whether a subject is of public concerns is a question of law. *Lewis v. McGraw–Hill Broadcasting Co., supra.*

■ The boundaries of public concern cannot be readily defined, but must be determined on a case-by-case basis. Generally, a matter is of public concern whenever "it embraces an issue about which information is needed or is appropriate," or when "the public may reasonably be expected to have a legitimate interest in what is being published." *Lewis v. McGraw–Hill Broadcasting Co., supra*, 832 P.2d at 1121 (statements concerning plaintiffs' $15 million lawsuit against department store and their allegations of racially discriminatory policies by store are of public concern); *see also Diversified Management, Inc. v. Denver Post, Inc., supra* (statements concerning widespread and ongoing land-development schemes of questionable propriety involved matters of public concern); *Smiley's Too, Inc. v. Denver Post Corp., supra* (statements

concerning numerous consumer complaints against, and District Attorney's Consumer Fraud Division's investigation into, dry cleaning establishment involved matters of public concern).

■ However, the balance should be struck in favor of a private plaintiff if his or her reputation has been injured by a non-media defendant in a purely private context. *Rowe v. Metz,* 195 Colo. 424, 579 P.2d 83 (1978).

Here, defamatory statements were made by private non-media defendants about a private plaintiff. These statements did not automatically become matters of public, as opposed to private, concern simply because plaintiff is a pilot for a commercial airline. There is no claim or evidence that plaintiff is an unsafe or less skilled pilot because he allegedly raped or attempted to rape women during off-duty hours. Nor does the evidence support the conclusion that members of the flying public are in danger of being sexually assaulted by plaintiff.

While plaintiff's working relationships with his co-workers may have been affected by this controversy, this is likewise insufficient to transform the matter into one of public concern. To hold otherwise would require that all defamatory statements concerning workers in this industry that could conceivably affect the workers' relationships would necessarily be considered matters of public concern.

We conclude, therefore, that the defamatory statements here involved matters of private, not public, concern. *See Ramirez v. Rogers,* 540 A.2d 475 (Me.1988) (statement by private non-media defendant that gymnastic school operator was under investigation for child abuse not a matter of public concern); *Snodgrass v. Headco Industries, Inc.,* 640 S.W.2d 147 (Mo.App.1982) (jury properly instructed on qualified privilege defense in slander action based on statement that plaintiff had, among other things, raped a co-worker).

The court, therefore, did not err in instructing the jury on plaintiff's defamation claims.

## IV.

We also reject the contention that the court erred in refusing to admit various testimonial and documentary evidence.

■ Trial courts have the discretionary authority to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403. In exercising such discretion, a trial court must consider the probative value of the proposed evidence, the nature of the offered evidence, and the other evidence admitted during trial. *Cherry Creek School District No. 5 v. Voelker,* 859 P.2d 805 (Colo.1993).

■ Only if a trial court abuses its discretion in excluding evidence, and such exclusion affects a party's substantial rights, will such exclusion provide the basis for a reversal of the court's judgment. *Cherry Creek School District No. 5 v. Voelker, supra.* Moreover, exclusion of evidence affects a substantial right of a party only if "it can be said with fair assurance that the error influenced the outcome of the case or impaired the basic fairness of the trial itself." *Banek v. Thomas,* 733 P.2d 1171, 1178 (Colo. 1986).

## A.

■ It is first contended that the trial court erred in excluding the testimony of plaintiff's former wife. Defendants argue that the ex-wife's proffered testimony about two prior incidents, occurring some eight to ten years before the trial, in which plaintiff physically attacked her, should have been admitted to impeach plaintiff's testimony about the incidents and because it bore on the issue of plaintiff's reputation. We are unpersuaded.

The court excluded this evidence on the basis that, under CRE 403, its probative value was substantially outweighed by its possible prejudicial effect and because it was cumulative.

Plaintiff was thoroughly cross-examined about these prior incidents with his ex-wife. Under such cross-examination, plaintiff admitted, among other things, that he had previously failed to disclose the existence of one of these incidents and that he had broken the front window of his ex-wife's house during a later incident. Hence, we cannot say that the court abused its discretion in concluding that the jury already had sufficient evidence concerning these two incidents. *See National Canada Corp. v. Dikeou,* 868 P.2d 1131 (Colo.App.1993)(relevant evidence may be excluded solely because it is cumulative).

Further, defendants' offer of proof demonstrates the highly prejudicial nature of the ex-wife's proposed testimony. Defendants' counsel indicated that the ex-wife would have testified that, during the later of the two incidents, plaintiff had smashed through the front window of her house, thereby severely cutting himself, and while bleeding, he had chased her around the house until he eventually caught her and beat her.

To the extent that such testimony was relevant for impeachment purposes, its probative value was slight. Further, the trial court was legitimately concerned that further evidence upon these collateral issues, including the circumstances surrounding plaintiff's divorce from his ex-wife, would tend to obscure the real issues presented. *See Cherry Creek School District No. 5 v. Voelker, supra.* Accordingly, we cannot conclude that the court abused its discretion in refusing to allow plaintiff's ex-wife to testify about these incidents.

### B.

■ Chamberlain next contends that she is entitled to a new trial because the court erred in redacting a portion of her written statement and in preventing her from giving certain testimony. We disagree.

Citing undue prejudice, the court redacted that portion of Chamberlain's statement in which she indicated that she had heard about plaintiff's "sexual aggression" from other flight attendants. The court also prevented Chamberlain from testifying, according to her offer of proof, that another flight attend-

ant had told her that plaintiff had made sexual advances towards that attendant.

Chamberlain argues that such evidence should have been admitted to prove that she did not act with a reckless disregard with respect to the truth of her statements. We are unconvinced.

The alleged defamatory statements made by Chamberlain were, in essence, that plaintiff had raped one flight attendant and that he had entered Ames hotel room without her permission and had attempted to rape her. These alleged acts both involve involuntariness on the part of the alleged victims. On the other hand, the evidence excluded by the court does not suggest any involuntariness on the part of the other flight attendants. Specifically, according to Chamberlain's offer of proof, she would have testified that another flight attendant told her that plaintiff attempted to play "footsy" with that flight attendant and propositioned her to engage in *consensual* sexual relations.

Such evidence could not reasonably lead to the conclusion that Chamberlain believed plaintiff was a rapist. Hence, the probative value of the proffered evidence was slight, at best. It exclusion resulted in no denial of defendants' substantial rights.

### V.

■ Finally, defendants contend that the court erred in striking 18 of their potential witnesses. We disagree.

Plaintiff moved to strike 18 of the roughly 40 potential witnesses listed by defendants in their C.R.C.P. 16 disclosure certificate. In his motion, plaintiff argued that, despite repeated formal and informal requests, defendants either had refused to provide him with the current addresses and phone number of these witnesses, thereby preventing him from informally contacting them, or had failed to produce them for noticed depositions. Over defendants' written objection, the court granted plaintiff's motion.

■ The purpose of the disclosure mandated by C.R.C.P. 16 is to provide parties with adequate time to prepare by obtaining relevant evidence. Sanctions for failure to comply with disclosure rules rest in the

discretion of the trial court and should not be disturbed absent an abuse of discretion. Such sanctions, which may include witness preclusion, should be commensurate with the seriousness of the violation. *J.P. v. District Court,* 873 P.2d 745 (Colo.1994).

Here, the record amply supports the trial court's findings that defendants "violated the intent and spirit of the rules [of disclosure and discovery] by negligence, if not outright willfulness," and that defendants' obstructionist behavior made it unduly time consuming and expensive for plaintiff to prepare for trial.

It is also clear that, in imposing this specific sanction, the court considered the seriousness of the offense as well as the fact that the case had been pending for almost three years and trial was approaching. In view of the trial court's day-to-day involvement with this hotly contested and extensively litigated case, it was in the best position to balance the need to assure that each party had access to relevant evidence against the need to prevent unnecessary prejudice and delay. *J.P. v. District Court, supra.*

Moreover, defendants did not make separate detailed offers of proof for these witnesses. The record includes only the very brief statements, contained in defendants' disclosure statement, as to the general subject areas the witnesses may have testified concerning. Hence, we cannot conclude either that the court abused its discretion in striking 18 of defendants' potential witnesses or that its actions resulted in any substantial prejudice to them.

The judgments against Continental, Chamberlain, and Richards, based upon negligence, are reversed, and the cause is remanded to the trial court for the dismissal of such claims. In all other respects, the judgments are affirmed.

METZGER, J., and ERICKSON *, Justice, concur.