The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 25, 2019

## 2019COA115

**No. 18CA1316, *SG Interests I, Ltd. v. Kolbenschlag* — Torts — Defamation — Libel**

In this libel action, a division of the court of appeals holds that defendant's online comment to a newspaper article is substantially true and, thus, that plaintiffs failed to prove the elements of defamation. It further concludes that there was no basis for plaintiffs to depose the defendant under C.R.C.P. 56(f). The division remands the case for the district court to determine and award reasonable appellate attorney fees.

COLORADO COURT OF APPEALS                                    **2019COA115**

Court of Appeals No. 18CA1316
Delta County District Court No. 17CV30026
Honorable Steven L. Schultz, Judge

SG Interests I, Ltd., a Texas limited partnership, and SG Interests VII, Ltd., a Texas limited partnership,

Plaintiffs-Appellants,

v.

Peter T. Kolbenschlag, a/k/a Pete Kolbenschlag,

Defendant-Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FREYRE
Fox and Welling, JJ., concur

Prior Opinion Announced June 27, 2019, <u>WITHDRAWN</u>

OPINION PREVIOUSLY ANNOUNCED AS "NOT PUBLISHED PURSUANT TO
C.A.R. 35(e)" ON June 27, 2019, IS NOW DESIGNATED FOR PUBLICATION

Petition for Rehearing <u>DENIED</u>

Announced July 25, 2019

Abadie & Schill P.C., Andrew D. Schill, William E. Zimsky, Durango, Colorado, for Plaintiffs-Appellants

Ballard Spahr, LLP, Steven D. Zansberg, Denver, Colorado, for Defendant-Appellee

¶ 1     In this libel action, plaintiffs, SG Interests I, Ltd., and SG Interests VII, Ltd., (collectively SGI) appeal the district court's order granting summary judgment for defendant, Peter T. Kolbenschlag, also known as Pete Kolbenschlag.  SGI challenges the court's findings that Mr. Kolbenschlag's online comments were substantially true and immaterial.  It also challenges the court's refusal to order Mr. Kolbenschlag's deposition under C.R.C.P. 56(f).  We affirm the court's judgment and remand for the determination and award of reasonable appellate attorney fees.

## I.     Background

### A.     Prior Federal Actions and Settlement

¶ 2     SGI and a competitor, Gunnison Energy Corporation (GEC), separately acquired and developed oil and gas leases in the Ragged Mountain Area of western Colorado.  SGI focused its efforts on the eastern side while GEC focused on the southern side.  Eventually, their interests collided and resulted in litigation between an SGI affiliate and GEC in 2004.  As part of settling this litigation, SGI and GEC agreed to collaborate in developing the Ragged Mountain Area.

¶ 3    In 2005, SGI and GEC executed a Memorandum of Understanding (MOU) concerning four leases offered by the Bureau of Land Management (BLM) in which they agreed that only SGI would submit a bid, and, if it won the bid, SGI would then assign 50% of the interest in the acquired leases to GEC. They further agreed to establish a business plan to develop the leases within ninety days of acquiring them.

¶ 4    SGI successfully bid on the four leases and certified that its bid was calculated "independently and without collusion for the purpose of restricting competition." It then assigned a 50% interest in the leases to GEC. After the assignment, SGI and GEC executed additional agreements to share 50% of any oil and gas interests acquired in the area at cost and to work together on permitting pipelines to service the area.[1] Neither SGI nor GEC informed the BLM of these agreements.

¶ 5    In October 2009, a former vice president of GEC (relator) filed a *qui tam* complaint under the False Claims Act (FCA) alleging that

---

[1] The additional agreements include the Area of Mutual Interest Agreement (AMIA) and the Option and Participation Agreement (OPA), and they are not the subject of this litigation.

SGI and GEC had falsely certified to the BLM that the bids for the leases did not violate 18 U.S.C. § 1860 (2018), and that they were not for the purpose of restricting competition. The relator had drafted and executed all of the agreements on behalf of GEC.

¶ 6 The Department of Justice (DOJ) then initiated an investigation into SGI's bidding practices with respect to federal oil and gas leases in the Ragged Mountain Area. It filed a complaint in February 2012 against SGI and GEC alleging that the companies had violated section 1 of the Sherman Act by executing the MOU on the eve of the auction and that, consequently, the United States had received less revenue than it would have received had SGI and GEC competitively bid for the leases. The DOJ offered to settle both the Sherman Act violation and the FCA violation for $550,000 and issued a press release stating:

> The Department of Justice today announced that it has reached a settlement with Gunnison Energy Corporation (GEC), SG Interests I Ltd. and SG Interests VII Ltd. (SGI) that requires the companies to pay a total of $550,000 to the United States for antitrust and False Claims Act violations related to an agreement not to compete in bidding for four natural gas leases sold at auction by the U.S. Department of Interior's Bureau of Land Management (BLM). Today's action marks the

3

first time the Department of Justice has challenged an anticompetitive bidding agreement for mineral rights leases.

¶ 7    The government received seventy-six public comments, and on December 12, 2012, a federal district court judge rejected the proposed settlement, finding "[t]here is no basis for saying that the approval of these settlements would act as a deterrence to these defendants and others in the industry, particularly as GEC considers 'joint bidding' to be common in the industry." The court concluded "the settlement of this civil action for nothing more than the nuisance value of this litigation is not in the public interest."

¶ 8    The parties then reached a second proposed settlement, which required SGI and GEC to each pay $275,000 in the Sherman Act case and SGI to pay $206,250 and GEC pay $245,000 in the FCA case. It also required SGI and GEC to provide advance notice to the government of any intention to bid for future leases with another company for a period of five years.

¶ 9    The agreement also stated that "[t]he United States contends that it has certain civil claims against SG arising from the Covered Conduct" and "[t]his Settlement Agreement is neither an admission of liability by SG nor a concession by the United States that its

claims are not well founded." It also declared that the parties had entered the settlement agreement "[t]o avoid the delay, uncertainty, inconvenience, and expense of protracted litigation."

¶ 10   The DOJ's motion for entry of final judgment stated:

> The revised settlements constitute meaningful relief that compensate the United States for damages it incurred as a result of the alleged antitrust violations, serve as a deterrent to these Defendants from engaging in joint bidding that violates the antitrust laws, and put others in the industry on notice that such anticompetitive conduct will not be tolerated.

The DOJ explained that the antitrust suit was an issue of first impression and that it wanted to quickly resolve the litigation to "deter others from crossing the line from appropriate to illegal joint bidding at BLM auctions" and specifically to deter SGI and GEC from crossing this line in the future. It acknowledged that the AMIA and OPA agreements did not violate the Sherman Act because those agreements involved "a collaboration through which pro-competitive efficiencies arise." However, it found that the MOU "reflected a deviation from common industry practice, as the MOU was merely a naked restraint that allowed Defendants to avoid a bidding war." And the DOJ noted that under this second proposed settlement

agreement, "SGI and GEC will have paid more than twelve times their original cost of acquisition of the four parcels," an amount exceeding actual damages. It acknowledged that the charges were not proven at trial and that "[t]he monetary amount is a product of settlement and accounts for litigation risk and costs."

¶ 11 The federal district court judge accepted this second proposed settlement on April 23, 2013. Thereafter, numerous publications reported that SGI had paid a fine to the federal government, and several stated that the fine was for violating antitrust laws. *See, e.g.*, Jon B. Dubrow, *Natural Gas Companies Settle Antitrust Suit Stemming from Joint Bidding*, Nat'l L. Rev. (Apr. 28, 2013) (noting that SGI and GEC "will each pay a fine of $275,000 to the DOJ to settle allegations of agreeing not to bid against each other in violation of antitrust law"); *infra* Part II.B n.2. SGI never brought a defamation action against these commentators.

## B. Current Litigation

¶ 12 Mr. Kolbenschlag is an environmental activist from Paonia, Colorado, who manages Mountain West Strategies, Ltd., a website that "specializes in public outreach and community engagement" in western Colorado. In 2016, the BLM cancelled eighteen of SGI's gas

leases in Colorado. The Glenwood Springs Post Independent newspaper published an article about the cancellation. John Stroud, *Divide Lease Decision Likely to Land in Court*, Glenwood Springs Post Independent, Nov. 28, 2016, https://perma.cc/6WM9-GK9J. The article discussed how SGI vowed to take legal action "based on evidence it says points to collusion between the Obama administration and environmental interests to reach a 'predetermined political decision.'" *Id.*

¶ 13    Mr. Kolbenschlag posted a reader comment to the article on the newspaper's website in which he noted the irony of SGI's collusion allegation and stated:

> While SGI alleges "collusion" let us recall that it, SGI, was actually fined for colluding (with GEC) to rig bid prices and rip off American taxpayers. Yes, these two companies owned by billionaires thought it appropriate to pad their portfolios at the expense of you and I and every other hard-working American.

The comment included a link to the DOJ press release describing the first settlement agreement for antitrust and FCA violations related to anticompetitive bidding by SGI and GEC.

¶ 14    Four months later, SGI filed this lawsuit. Mr. Kolbenschlag filed a motion to dismiss, contending that his comment was

substantially true and that SGI had not pleaded actual malice. After SGI filed an amended complaint, Mr. Kolbenschlag renewed his motion to dismiss. The district court converted the motion to one for summary judgment under C.R.C.P. 56 and set an expedited briefing schedule. Mr. Kolbenschlag then withdrew the portion of his motion seeking judgment on actual malice. Thereafter, SGI filed a response and sought leave to take Mr. Kolbenschlag's deposition under C.R.C.P. 56(f) concerning his factual basis for stating the comments were substantially true.

¶ 15 The district court granted the motion for summary judgment, denied SGI's request to depose Mr. Kolbenschlag, and in a separate hearing not at issue here, awarded Mr. Kolbenschlag attorney fees finding that the lawsuit was frivolous and vexatious. This appeal followed.

## II. Summary Judgment Properly Granted

¶ 16 SGI first contends that the district court erroneously concluded that Mr. Kolbenschlag's comments were substantially true and immaterial. We disagree.

### A.      Standard of Review and Law

¶ 17      We review grants of summary judgment de novo.  *Morrison v. Goff*, 91 P.3d 1050, 1052 (Colo. 2004); *SMLL, L.L.C. v. Peak Nat'l Bank*, 111 P.3d 563, 564 (Colo. App. 2005).  Summary judgment is a drastic remedy and is appropriate only when the pleadings and the supporting documents show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  *W. Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo. 2002).

¶ 18      A "material fact" is one that will affect the outcome of the case or claim.  *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004).  In determining whether a genuine issue of material fact exists, we consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."  C.R.C.P. 56(c).  All favorable inferences that can be drawn from the record must be resolved in favor of the non-moving party.  *People in Interest of S.N.*, 2014 CO 64, ¶¶ 15-16.

¶ 19      "Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him to incur injury or damage."  *Lawson v. Stow*, 2014 COA 26, ¶ 15 (quoting *Keohane v.*

9

*Stewart*, 882 P.2d 1293, 1297 (Colo. 1994)). "A statement may be defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Sky Fun 1 v. Schuttloffel*, 27 P.3d 361, 369 n.3 (Colo. 2001) (alteration omitted) (quoting *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1357 (Colo. 1983)).

¶ 20    The elements of defamation are:

> (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication.

*McIntyre v. Jones*, 194 P.3d 519, 523-24 (Colo. App. 2008) (quoting *Williams v. Dist. Court*, 866 P.2d 908, 911 n.4 (Colo. 1993)).

¶ 21    Substantial truth is a complete defense to defamation. *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004). A defendant need only show that "the substance, the gist, the sting of the matter is true." *Id.* (citation omitted). So, the question is whether "there is a substantial difference between the allegedly libelous statement and

the truth; or, stated differently whether the statement produces a different effect upon the reader than that which would be produced by the literal truth of the matter." *Gomba v. McLaughlin,* 180 Colo. 232, 236, 504 P.2d 337, 339 (1972). This inquiry focuses on an "average reader" and asks whether "the challenged statement produces a different effect upon the [average] reader than that which would be produced by the literal truth of the matter." *Fry v. Lee,* 2013 COA 100, ¶ 23.

¶ 22    In Colorado, the plaintiff in a defamation case must prove that a statement is false and material. *Bustos v. A & E Television Networks,* 646 F.3d 762, 764 (10th Cir. 2011) (applying Colorado law). To be material, "the alleged misstatement must be likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth; a misstatement is not actionable if the comparative harm to the plaintiff's reputation is real but only modest." *Id.* at 765 (citation omitted).

¶ 23    Because "protracted litigation could have a chilling effect upon constitutionally protected rights of free speech," it is appropriate to "prompt[ly] resolv[e] . . . defamation actions . . . by summary

11

judgment." *Barnett v. Denver Publ'g Co.*, 36 P.3d 145, 147 (Colo. App. 2001).

### B.    Application

¶ 24    SGI asserts that the comment, "was actually fined for colluding (with GEC) to rig bid prices and rip off American taxpayers," was not substantially true because (1) it had settled the antitrust suit for nuisance value; (2) the claims had not proceeded to trial; (3) there were no actual findings of illegal conduct; (4) the DOJ had expressed concerns about its ability to succeed at trial; and (5) SGI did not admit any wrongdoing and, therefore, any statement that it was "fined for colluding" was materially false.  We are not persuaded.

¶ 25    First, we reject SGI's claim that it settled the case for nuisance value.  The record shows that the federal judge rejected the first settlement agreement precisely because it reflected a nuisance value settlement that would not deter the parties or others in the industry from engaging in illegal bidding.  The federal judge concluded that a nuisance value settlement was not in the public interest.

¶ 26 Moreover, the DOJ explained its reasons for settling: (1) stating that this was an issue of first impression; (2) proving the claim would be costly; (3) settling would compensate the government for the violations by reimbursing it more money than it lost at auction; and (4) settling would deter SGI, GEC, and other companies from executing these illegal agreements. And the record reveals that SGI and GEC paid twelve times the cost of the four leases subject to the antitrust claim, an amount that directly refutes SGI's claim that the payment was simply a business decision and the amount paid was for nuisance value.

¶ 27 Next, we are not persuaded that the absence of a trial requires a different result or that the record shows there was no improper conduct. Initially, we note that SGI does not dispute that it executed the MOU with GEC on the eve of the auction and that it did not disclose the MOU to the BLM. While we acknowledge that the FCA agreement states the agreement is not an admission of liability by SGI, importantly, it also states that it is not a concession by the United States that its claims are not well founded. Moreover, the agreement specifically provides that "[n]othing in this Agreement releases SG from any liability for the Covered Conduct

13

under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1." And paragraph six of the agreement lists ten separate claims from which SGI was not released. Finally, the agreement required SGI to waive and not assert any defenses it may have to any future criminal prosecution or administrative action.

¶ 28 As well, the antitrust settlement specifically addressed the wrongful conduct by declaring up front that "the United States determined that SGI's and GEC's agreement to bid jointly pursuant to the MOU constituted a *per se* violation of the Sherman Act." It also addressed the companies' defenses, stating that

> [t]he United States determined that [SGI's] purported . . . defense amounted to little more than a contention that by successfully colluding under the MOU at the February and May 2005 auctions, the Defendants eventually learned to overcome their mutual distrust. However, the mere hope that parties might someday come to an understanding on terms of a legitimate venture does not justify their agreeing to a naked restraint of trade in the interim.

¶ 29 Moreover, the antitrust agreement set forth "punishment" related to the improper bidding — not only the monetary damages SGI and GEC had to pay, but also the further requirement that "GEC and SGI agree to provide thirty days advance notice to the

14

United States of any joint bidding, either between themselves or with another party, at a BLM auction. Upon the United States' request, each must provide additional information to the United States regarding its plans to bid jointly."

¶ 30 As well, the DOJ explained its reasoning for not proceeding to trial in the antitrust case, which had nothing to do with the strength of its case or the absence of misconduct. Instead it explained that

> [t]he improper joint bidding by Defendants occurred nearly eight years ago and since that time they have been engaged in a legitimate venture that has resulted in substantial development of the Ragged Mountain Area. . . . [T]he goal of a civil antitrust remedy is to terminate the violation, undo its effects and, in cases where the United States is the injured party, obtain compensation for its injury.

¶ 31 Accordingly, we conclude that viewing the evidence favorably for SGI and GEC, Mr. Kolbenschlag's comment that SGI and GEC "colluded to rig bid prices," as understood by the average reader, is substantially true and is well supported by the record. *See Gomba,* 180 Colo. at 236, 504 P.2d at 339; *see also Brokers' Choice of Am., Inc. v NBC Universal, Inc.,* 861 F.3d 1081, 1107 (10th Cir. 2017) ("The law of defamation overlooks inaccuracies and focuses on

substantial truth." (quoting *Schwarz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1146 (10th Cir. 2000))); *Fry*, ¶¶ 39-40 (concluding that "caught up in plagiarism charge" was substantially true because the plain language would not lead an average reader to conclude that criminal charges were brought against the plaintiff); *see also* Merriam-Webster Dictionary, https://perma.cc/TGU7-9M69 (defining colluding as "to work together secretly especially in order to do something illegal or dishonest").

¶ 32   Finally, we are not persuaded that Mr. Kolbenschlag's use of the word "actually fined" requires a different result.  The word "fine" means "a sum imposed as punishment for an offense" or "a forfeiture or penalty paid to an injured party in a civil action." Merriam-Webster Dictionary, https://perma.cc/6792-KGWE; *see also Knapp v. Post Printing & Publ'g Co.*, 111 Colo. 492, 497-98, 114 P.2d 981, 984 (1943) (the meaning of an allegedly defamatory statement is determined by the plain and ordinary meaning of the word).  Given that SGI and GEC paid twelve times the amount of the government's actual damages to settle the antitrust and FCA claims, we have little difficulty concluding that an average reader

16

would find no substantial difference between SGI settling civil claims brought against it for money and paying a fine. Indeed, many commentators described this payment as a fine for alleged misdeeds at the time of the settlement, and SGI does not explain why it did not pursue defamation claims against those commentators at that time.[2]

¶ 33    Even if we were to conclude that the "gist" of the comment was false, we agree with the district court that any inaccuracy is immaterial. *See Bustos*, 646 F.3d at 764 ("Where truth was once

---

[2] While many of the articles described SGI's conduct as "alleged," many did not. For example, one article stated that "the companies were implicated for a 2005 collusion scheme" and "[t]he two companies were found to have conspired to buy federal leases for lower prices." Competition Policy International, *US: Gas Cos Agree to Even Steeper Penalty, Fine Nearly Doubled*, Apr. 22, 2013, https://perma.cc/MF2D-EN7V. A Durango Herald newspaper article stated that SGI and GEC "agreed to pay a $550,000 fine to settle an antitrust lawsuit by the Justice Department for agreeing not to compete in a 2005 auction of drilling rights in Western Colorado." Joe Hanel, *Driller Starts Super PAC to Support Tipton*, Durango Herald, Oct. 28, 2012, https://perma.cc/PD68-22AG. And a Crested Butte News article reporting on the settlement titled the article "North Fork gas drillers fined by feds for collusion." *North Fork Gas Drillers Fined by Feds for Collusion*, Crested Butte News, Feb. 22, 2012, https://perma.cc/ME47-46DW. Although this article later stated that the parties settled the federal antitrust lawsuit "alleging the two companies cooperated in submitting winning bids," *id.*, the title of the article is almost identical to Mr. Kolbenschlag's statement.

strictly a defense, now the plaintiff must shoulder the burden in his case-in-chief of proving the *falsity* of a challenged statement if he is a public figure or the statement involves a matter of public concern.").  Mr. Kolbenschlag's comment included a link to the DOJ press release stating that the settlement "*requires the companies to pay* a total of $550,000 to the United States *for antitrust and False Claims Act violations* related to *an agreement not to compete in bidding* for four natural gas leases sold at auction by the U.S. Department of Interior's Bureau of Land Management (BLM)." (Emphasis added.)  We conclude that the press release's "pay for antitrust and False Claims Act violations" language and Mr. Kolbenschlag's "fined for colluding" comment are virtually indistinguishable.  And, if a reasonable person knew all of the undisputed facts apart from the comment, including the DOJ's reasons for settling, the federal district court's rejection of the first nuisance value settlement, and the additional requirement that SGI inform the DOJ of future joint bidding agreements, Mr. Kolbenschlag's statement is not "likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth."  *Bustos*, 646 F.3d at 764-65 (citation

omitted); *Jankovic v. Int'l Crisis Grp.*, 429 F. Supp. 2d 165, 177 n.8 (D.D.C. 2006) (explaining that an allegedly defamatory statement was clarified by two internet links and "[w]hat little confusion the sentence could possibly cause is easily dispelled by any reader willing to perform minimal research"), *aff'd in part, rev'd in part and remanded*, 494 F.3d 1080 (D.C. Cir. 2007).

¶ 34    We are not persuaded that Mr. Kolbenschlag's comment that SGI was *actually fined* is problematic when compared to other articles describing a *fine for allegations* for the reasons described above. The undisputed record demonstrates that SGI paid twelve times the actual amount of damages to settle two civil claims related to its illegal bidding practices in the MOU and that it agreed to additional restrictions to its bidding practices in future joint bidding ventures. Therefore, the absence of the word "alleged" is immaterial and does not affect the substantial truth of the comment.

### III.    Deposition Would Not Alter the Outcome

¶ 35    SGI next contends that the district court erroneously denied its discovery request to depose Mr. Kolbenschlag. It reasons that a deposition would shed light on whether Mr. Kolbenschlag could

validate his claim that the comment was substantially true. Because we conclude that Mr. Kolbenschlag's subjective belief is not relevant, and because SGI has failed to allege any additional facts it could have discovered through a deposition, we discern no abuse of discretion by the district court in denying the request.

## A. Standard of Review and Law

¶ 36 "Whether to grant a request for discovery pursuant to C.R.C.P. 56(f) lies within the discretion of the trial court." *A-1 Auto Repair & Detail, Inc. v. Bilunas-Hardy*, 93 P.3d 598, 604 (Colo. App. 2004). A district court abuses its discretion when it refuses to grant a party a reasonable continuance to permit utilization of the discovery procedures provided by the rules of civil procedure and when it is premature to grant a motion for summary judgment. *Holland v. Bd. of Cty. Comm'rs*, 883 P.2d 500, 508 (Colo. App. 1994). However, "[i]t is not an abuse of discretion to deny a C.R.C.P. 56(f) request if the movant has failed to demonstrate that the proposed discovery is necessary and could produce facts that would preclude summary judgment." *A-1 Auto Repair*, 93 P.3d at 604.

¶ 37    The district court found that SGI had failed to articulate how Mr. Kolbenschlag's deposition would reveal facts that could change the outcome. *See id.* Indeed, it found that Mr. Kolbenschlag's deposition was irrelevant to the objective question whether his comment was substantially true; that actual malice (the subjective issue) was no longer part of the litigation; and that Mr. Kolbenschlag had no personal, special, or unique knowledge of the prior litigation that would cause him to know more about the substantial truth of it. We discern no abuse of discretion in the court's finding for two reasons.

¶ 38    First, Mr. Kolbenschlag's subjective reasons for the comment have no bearing on the question whether a reasonable person would find his comment substantially true or materially false. This is particularly so since the burden of proving material falsity is on the plaintiff. *See Brokers' Choice of Am.*, 861 F.3d at 1110 (applying Colorado law). SGI's assertion that the deposition would "determine any objective criteria upon which he can validate that his statement was substantially true" is illogical and misconstrues both the burden and the objective standard applicable to defamation. And,

21

because actual malice was not an issue for summary judgment, Mr. Kolbenschlag's reasons for making the comment are simply irrelevant. Even assuming he acted out of malice or had no reason to believe the truth of what he said, his subjective intent is irrelevant to whether the comment itself was substantially true. *See Fry*, ¶ 34 (explaining that the substantial truth test requires a court to determine "how the publication would have been understood by a *reasonable or average law reader*") (emphasis added).

¶ 39 Second, nothing in the records shows that Mr. Kolbenschlag had any special or unique knowledge of the prior litigation. SGI argues that Mr. Kolbenschlag *may have* followed the litigation closely because he worked on issue campaigns and some of the commenters in the antitrust litigation had "endorsed" his LinkedIn page. These assertions are speculative. And, even if proven, they are irrelevant to the issue whether the comment itself is substantially true. Because Mr. Kolbenschlag's comment does not constitute defamation, his intent in making it is irrelevant; thus, we affirm the district court's order denying SGI's deposition request.

## IV. Appellate Attorney Fees

¶ 40 Relying on C.A.R. 38(d) and 39.1, Mr. Kolbenschlag asks us to award him attorney fees and costs on appeal. He contends that SGI's appeal is groundless, frivolous, and vexatious. We agree that the appeal is groundless and frivolous and, therefore, we do not need to consider whether it is vexatious.

¶ 41 In any civil action, a court shall award "reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." § 13-17-102(2), C.R.S. 2018.

¶ 42 Appeals can be frivolous in two ways: (1) they may be frivolous as filed where the judgment by the court below is so plainly correct and the legal authority contrary to appellant's position so clear that there is really no appealable issue; or (2) an appeal may be frivolous as argued where the appellant commits misconduct in arguing the appeal. *Averyt v. Wal-Mart Stores, Inc.*, 2013 COA 10, ¶ 40. "Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct . . . ." *Mission Denver Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984). C.A.R. 38(d) should, therefore, only be used to impose sanctions in clear and

23

unequivocal cases when the appellant presents no rational argument, or when the appeal is prosecuted for the sole purpose of harassment or delay. *Wood Bros. Homes, Inc. v. Howard*, 862 P.2d 925, 934-35 (Colo. 1993); *Mission Denver Co.*, 674 P.2d at 365-66.

¶ 43     We begin with SGI's appeal of the second issue — the court's refusal to order Mr. Kolbenschlag's deposition — and conclude that it is frivolous because there is no proper legal basis for SGI's argument. *See Mitchell v. Ryder*, 104 P.3d 316, 323 (Colo. App. 2004) ("An appeal is frivolous if the proponent can present no rational argument based on the evidence and law or the appeal is prosecuted for the sole purpose of harassment or delay."). Once Mr. Kolbenschlag withdrew his actual malice argument, his subjective belief in the truth of his comment was plainly irrelevant. We therefore discern no basis in law or in fact for SGI to pursue an appeal of that ruling.

¶ 44     SGI asserts repeatedly that Mr. Kolbenschlag's deposition was relevant because he "may have had knowledge regarding the underlying federal litigation and its eventual outcome." It argues that Mr. Kolbenschlag "is not a random person" but is "a seasoned media professional and the owner of" an issue group. And it asserts

24

that Mr. Kolbenschlag knew some of the individuals that commented on the initial settlement agreement because they had "endorsed the Defendant on LinkedIn" and therefore he may have "provided assistance or advice to some commenters." However, as described above, Mr. Kolbenschlag's subjective reasons for commenting on the news article are simply irrelevant to whether his comment was substantially true.

¶ 45    For similar reasons, we award appellate attorney fees for the libel claim. SGI's claim on appeal that its settlement was purely a "business decision" for "nuisance value" and that it did not engage in misconduct is directly refuted by the undisputed record. These undisputed facts are

- SGI and GEC competed for oil and gas leases.

- SGI and GEC executed the MOU agreeing not to compete against each other for four leases.

- SGI and GEC never disclosed the MOU to the BLM.

- Representatives from both SGI and GEC attended the auction where SGI secured the successful bid.

- The successful bids were less than market value.

- SGI conveyed 50% of the leases to GEC after the bidding process.

- Emails among GEC executives congratulated themselves on avoiding a bidding war with SGI by way of the undisclosed MOU.

- A GEC executive brought a federal *qui tam* action alleging illegal collusion between SGI and GEC in the MOU and SGI's false certification that there had been no bid rigging.

- The DOJ concluded the MOU constituted a per se restraint of trade, violated section 1 of the Sherman Act, and commenced an antitrust lawsuit.

- A federal judge rejected the first settlement proposal concluding it was for nuisance value, provided insufficient deterrence to the parties and others in the industry, and, thus, was not in the public interest.

- The settlement entered required SGI and GEC to pay twelve times the amount of damages actually incurred and required them to give the government advance notice of any proposed joint bidding practices for five years.

26

¶ 46 Because the overwhelming record refutes SGI's libel claims, we conclude there is no reasonable basis for it. *See* § 13-17-102(2) (attorney fees proper where the court determines a party "lacked substantial justification"). Accordingly, we order that attorney fees be awarded jointly and severally against SGI and its counsel. § 13-17-102(3). We exercise our discretion under C.A.R. 39.1 to remand the case to the district court for a determination and award of reasonable appellate attorney fees.

## V. Conclusion

¶ 47 The judgment is affirmed, and the case is remanded for the district court to determine and award reasonable appellate attorney fees.

JUDGE FOX and JUDGE WELLING concur.