2014 COA 26

**Kenneth M. LAWSON, II, and Megan E. Lawson, Plaintiffs–Appellants,**

v.

**William R. STOW, IV, Defendant–Appellee.**

**Court of Appeals No. 13CA0134**

Colorado Court of Appeals,
Div. VII.

Announced March 13, 2014

Hopkins Way PLLC, Edward C. Hopkins Jr., Denver, Colorado, for Plaintiffs–Appellants

No Appearance for Defendant–Appellee

Opinion by JUDGE J. JONES

¶ 1 Plaintiffs, Kenneth M. Lawson, II, and Megan E. Lawson, appeal from the district court's judgment against them on their defamation and negligence per se claims against defendant, William R. Stow, IV. We reverse the judgment as to one statement supporting the defamation claim, remand for further findings as to that statement, and otherwise affirm.

## I. Background

¶ 2 Ms. Lawson and Mr. Stow were married to each other from 2003 until January 2011. A few days after the dissolution of that marriage, Ms. Lawson married Mr. Lawson.

¶ 3 Pursuant to the decree of dissolution, Mr. Stow had parenting time with the children of the marriage—a daughter (K) born in October 2005, a son born in March 2007, and another son born in October 2008—on weekends and during other blocks of time. It appears that Ms. Lawson had primary physical custody of the children.

¶ 4 In December 2010, Mr. Stow learned that the Lawsons intended to move to Texas with the children. On April 6, 2011, he received a letter from Ms. Lawson confirming

that the Lawsons intended to move to Texas with the children, perhaps in June 2012. Mr. Stow did not want the children to move, and he anticipated litigation over relocating the children.

¶ 5 On April 17, 2011, Mr. Stow telephoned the Colorado Department of Human Services Child Welfare Division (DHS). He told the person taking the call that: (1) K had told him Mr. Lawson had hit her on the head; and (2) K had a bump on her head.

¶ 6 Two days later, Ms. Lawson filed a motion in the dissolution case to permit her to relocate to Texas with the children.

¶ 7 That same day, a social services caseworker met with Mr. Stow regarding his report. Mr. Stow repeated what he had previously reported on April 17. The caseworker met with K and examined her head, but did not detect a bump. The caseworker also spoke with Mr. Stow's tenant, who said she had heard K tell Mr. Stow that Mr. Lawson had hit K on the head. Over the next few weeks, the caseworker met with and spoke to Mr. Stow, Ms. Lawson, Mr. Lawson, the children, and others concerning the report.

¶ 8 At trial, the caseworker testified that she was not formally investigating an allegation of child abuse, but was instead performing a "family assessment" to determine whether K was at risk. She also testified that the reports prepared pursuant to such an assessment are not public records—only the parents are allowed to see the reports.[1]

¶ 9 In mid-May 2011, the caseworker closed the assessment without taking or recommending any action.

¶ 10 On November 14, 2011, after the court had denied Ms. Lawson's motion for permission to relocate the children, Mr. Stow telephoned the Arvada Police Department (APD) to report a threat against him. He subsequently told an officer that Ms. Lawson had posted the following statement on Facebook: "Re-post this if there is someone that is still alive because you don't want to go to prison."[2] He said he "felt" that the Facebook post was a threat against his life and that he had a "gut feeling" that Ms. Lawson would want him dead. Mr. Stow further explained why he perceived the Facebook post as a threat against his life, bringing up the possibility of retaliation for the court's ruling on Ms. Lawson's motion for permission to relocate and identifying prior alleged events and incidents involving Ms. Lawson. After speaking with Ms. Lawson, the officer determined that the Facebook post was not a "valid threat" against anyone and took no further action on the report.

¶ 11 The Lawsons filed suit against Mr. Stow, asserting a variety of claims. As relevant here, the Lawsons asserted a defamation claim and a negligence per se claim. At trial, the Lawsons' attorney clarified that the defamation claim was limited to three alleged statements: (1) Mr. Stow's statement to a social services representative on April 17, 2011, that K had told him Mr. Lawson had hit her on the head; (2) Mr. Stow's statement to a social services representative on April 17, 2011, that K had a bump on her head; and (3) Mr. Stow's statement to the APD officer on November 14, 2011, that he "felt as though [the Facebook post] was a threat to him directly." The negligence per se claim was based on the theory that Mr. Stow's statement to the APD officer was a false report of a crime in violation of section 18–8–111, C.R.S.2013. Though the Lawsons did not specify which part of section 18–8–111 Mr. Stow had violated, it seems clear that they relied on subsection (1)(b), which specifically proscribes false reports of crimes to law enforcement authorities.[3] The Lawsons asserted that the statute creates a standard of care, and that if a person breaches that standard, a tort claim may be asserted by an injured party.

¶ 12 These claims were tried to the court. The court issued a written order in which it

---

1. The twelve-page "Family Assessment Response Case Summary Report" was admitted into evidence at trial.

2. The post was dated August 23, 2011, shortly after the court had denied Ms. Lawson's motion, but Mr. Stow testified he did not see it until November.

3. Section 18–8–111 proscribes a variety of kinds of false reporting to authorities.

found and concluded, as relevant here, as follows:

- Mr. Stow's statements to DHS on April 17, 2011, related to matters of public concern because they were allegations of child abuse. Therefore, the Lawsons were required to prove that those statements were false by clear and convincing evidence.

- The Lawsons had not proved by clear and convincing evidence that those statements were false.

- Mr. Stow's statement to the APD officer on November 14, 2011, related to a matter of public concern because "police reports are matters of public concern."

- Mr. Stow's statement to the officer could not be construed as a statement of fact because it relayed what he "felt." Thus, it could not be disproved and was not actionable.

- Even if the statement was capable of being disproved, the Lawsons had not proved by clear and convincing evidence that Mr. Stow "did not feel that [the Facebook post] was a threat directed to him."

- Because section 18–8–111 is not intended to protect individuals, the Lawsons could not base a negligence per se claim on Mr. Lawson's alleged violation of that statute.

- The Lawsons had not proved that Mr. Stow had violated section 18–8–111 or that they had incurred any actual damages as a result of any such violation.

¶ 13 Based on these findings and conclusions, the court entered judgment in Mr. Stow's favor on the defamation and negligence per se claims.

¶ 14 The Lawsons appeal the district court's judgment on these claims. Specifically, they contest the court's legal conclusions that (1) the three statements at issue related to matters of public concern; (2) Mr. Stow's

statement to the APD officer could not be disproved because it was not a statement of fact; and (3) a violation of section 18–8–111(1)(b) cannot support a negligence per se claim.

## II. Discussion

### A. Defamation

#### 1. General Principles

¶ 15 "Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him to incur injury or damage." *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo.1994). A common law cause of action for defamation exists to protect individuals from such injury or damage. *Id.* The elements of that cause of action are: "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Williams v. Dist. Court*, 866 P.2d 908, 911 n. 4 (Colo.1993); *accord McIntyre v. Jones*, 194 P.3d 519, 523–24 (Colo.App.2008).

¶ 16 But "[t]he interest in protecting an individual's reputation is not paramount in all circumstances." *McIntyre*, 194 P.3d at 524. That interest must be weighed against society's interest in fostering vigorous public debate. *Keohane*, 882 P.2d at 1298; *McIntyre*, 194 P.3d at 524. Society's interest is enshrined in the First Amendment to the United States Constitution and article II, section 10 of the Colorado Constitution.

¶ 17 "[T]o account for the existence and importance of society's interest in free speech, the courts have imposed a number of modifications to the common law of defamation...." *McIntyre*, 194 P.3d at 524. Two of those modifications are at issue in this case—the qualified privilege application to statements relating to matters of public concern, and the nonactionability of certain statements of opinion. We address each in turn below as they bear on the three state-

ments on which the Lawsons' defamation claim is premised.

## 2. Matters of Public Concern

### a. Governing Law and Standard of Review

¶ 18 Where a statement relates to a matter of public concern, the speaker's communication is subject to a qualified privilege. There is no absolute immunity from liability, but the defamed party is subject to heightened burdens of proof. These are: (1) the defamed party must prove the falsity of the statement by clear and convincing evidence, rather than by a mere preponderance; (2) the defamed party must prove that the speaker published the statement with actual malice—that is, with actual knowledge that the statement was false or with reckless disregard for whether the statement was true; and (3) the defamed party must establish actual damages to maintain the action, even if the statement is defamatory per se. *Id.* at 524; *see Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1106–09 (Colo. 1982); *see also Keohane*, 882 P.2d at 1304.

> The boundaries of public concern cannot be readily defined, but must be determined on a case-by-case basis. Generally, a matter is of public concern whenever "it embraces an issue about which information is needed or is appropriate," or when "the public may reasonably be expected to have a legitimate interest in what is being published."

*Williams v. Cont'l Airlines, Inc.*, 943 P.2d 10, 17 (Colo.App.1996) (quoting in part *Lewis v. McGraw–Hill Broad. Co.*, 832 P.2d 1118, 1121 (Colo.App.1992)); *see City of San Diego v. Roe*, 543 U.S. 77, 83–84, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) ("public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication").

¶ 19 "[W]hether ... speech addresses a matter of public concern must be determined by [the expression's] content, form, and context ... as revealed by the whole record.'" *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (plurality opinion) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)); *accord City of San Diego*, 543 U.S. at 83, 125 S.Ct. 521; *McIntyre*, 194 P.3d at 525; *Barrett v. Univ. of Colo.*, 851 P.2d 258, 263 (Colo.App.1993).

¶ 20 The Supreme Court has said that "[t]he commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions ... are without question events of legitimate concern to the public...." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *see Shoen v. Shoen*, 2012 COA 207, ¶ 25, 292 P.3d 1224 (statements made during a television interview implicating an individual in a highly publicized murder investigation related to a matter of public concern); *Bowers v. Loveland Pub. Co.*, 773 P.2d 595, 596 (Colo.App.1988) (reports prepared by police are matters of public concern). But *Cox* involved publication of information revealed in an indictment filed with a court in a criminal prosecution. Thus, considered in context, it is not clear that the Court intended to sweep all communications pertaining to the commission of crimes within the ambit of constitutionally protected speech.

¶ 21 Nonetheless, courts in numerous jurisdictions, including Colorado, have held that a private individual's report to law enforcement authorities of possible criminal conduct is subject to the qualified privilege. *Burke v. Greene*, 963 P.2d 1119, 1122 (Colo. App.1998); *see also, e.g., Gallo v. Barile*, 284 Conn. 459, 935 A.2d 103, 111–12 (2007); *Fridovich v. Fridovich*, 598 So.2d 65, 67–69 (Fla. 1992); *Kelley v. Tanoos*, 865 N.E.2d 593, 599–600 (Ind.2007); *Jalou II, Inc. v. Liner*, 43 So.3d 1023, 1037 (La.Ct.App.2010); *Caldor, Inc. v. Bowden*, 330 Md. 632, 625 A.2d 959, 968–69 (1993); *Writt v. Shell Oil Co.*, 409 S.W.3d 59, 68–73 (Tex.App.2013). This conclusion appears to be based on the judgment that the nature of such statements (about criminal activity) and the context in which they are communicated (to law enforcement authorities) render such statements matters of public concern or interest. *See Kelley*, 865 N.E.2d at 599–600 (statements to law enforcement authorities further a public interest in enhancing public safety

through the investigation of suspected criminal activity); *Jalou II*, 43 So.3d at 1037 ("A good faith report to law enforcement officers of suspected criminal activity may appropriately be characterized as speech on a matter of public concern."); *see also* Restatement (Second) of Torts § 598 & cmts. e, f (1977) (conditional "public interest" privilege applicable to statements by private individuals to public officials concerning criminal behavior).

¶ 22 With these principles in mind, we turn to the district court's conclusions that the three statements at issue related to matters of public concern. In so doing, we review the district court's conclusions · de novo. *McIntyre*, 194 P.3d at 525; *Smiley's Too, Inc. v. Denver Post Corp.*, 935 P.2d 39, 41 (Colo.App.1996); *see NBC Subsidiary (KCNC–TV), Inc. v. Living Will Ctr.*, 879 P.2d 6, 11 (Colo.1994) ("Whether allegedly defamatory language is constitutionally privileged is a question of law and a reviewing court must review the record *de novo* to insure that the trial court's judgment does not constitute a forbidden intrusion on the field of free expression.").

### b. Application

¶ 23 Taking the two April 17, 2011, statements first, we conclude that they related to matters of public concern. Both statements conveyed an allegation of child abuse. The General Assembly has deemed child abuse a matter of sufficient concern that it has enacted a statute requiring certain individuals with "reasonable cause to know or suspect that a child has been subjected to abuse" to report the information to public authorities. § 19–3–304(1), (2), C.R.S.2013. Any other person may make such a report. § 19–3–304(3). With certain exceptions not relevant here, any person making such a report is immune from civil liability unless the reporting person's behavior was "willful, wanton, and malicious." § 19–3–309, C.R.S. 2013.

¶ 24 Though a parent, like Mr. Stow, is not among the individuals required to report suspected child abuse, we nonetheless view the foregoing statutes as reflecting a strong public interest in encouraging the reporting of child abuse. *See Bol v. Cole*, 561 N.W.2d

143, 150 (Minn.1997) (recognizing "a strong public interest in reporting child abuse and protecting children from further abuse"; defamation claim subject to qualified privilege).

¶ 25 Also, Mr. Stow made his statements to public employees charged with investigating allegations of child abuse. Though those public employees may not technically qualify as law enforcement authorities, they were nonetheless authorized to take action on the allegations. *See* Restatement (Second) of Torts § 598 (privilege applies to communications to "a public officer ... who is authorized or privileged to take action if the defamatory matter is true").

We also conclude that Mr. Stow's statement on November 14, 2011, to the APD officer related to a matter of public concern. Though that statement did not concern an allegation of child abuse, it did concern an allegation of a crime. And it was communicated to a law enforcement officer.

¶ 26 The Lawsons rely primarily on *Williams*, 943 P.2d 10, to support their position that the three statements at issue did not relate to matters of public concern. But that case is distinguishable. Though it concerned allegations of criminal behavior, the statements there at issue were made by private individuals to other private individuals. *See also Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1035–37 (10th Cir.2013) (noting this distinction in Colorado law); *People v. Ryan*, 806 P.2d 935 (Colo.1991) (criminal libel statute constitutional to the extent it covered statements by a private individual to other private individuals impugning a person's reputation; statements alleged criminal conduct); *Rowe v. Metz*, 195 Colo. 424, 579 P.2d 83 (1978) (private plaintiff injured by a nonmedia defendant in a purely private context entitled to presumption of damages).

¶ 27 Therefore, we conclude that the district court did not err by requiring the Lawsons to prove the falsity of the statements by clear and convincing evidence.

### 3. Matter of Opinion

¶ 28 Though we have concluded that Mr. Stow's statement to the APD officer related

to a matter of public concern, we must also decide whether it included an actionable statement of fact. This is because the district court, in deciding whether the Lawsons had proved by clear and convincing evidence that the statement was false, characterized the potentially actionable statement as whether Mr. Stow felt that the Facebook post was a threat. ("Plaintiffs did not prove, by clear and convincing evidence, that the Defendant did not feel that this statement was a threat directed at him.")

¶ 29 We conclude that the district court erred in assessing whether the statement was potentially actionable because the court focused too much on Mr. Stow's prefatory language that he "felt" the Facebook post was a threat directed to him. Regardless of such language, precedent requires that the statement be examined more carefully to determine whether it included an actionable statement of fact.

a. Governing Law and Standard of Review

¶ 30 Statements of pure opinion are constitutionally protected – that is, they are not actionable defamation. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *see Burns v. McGraw–Hill Broad. Co.,* 659 P.2d 1351, 1358 (Colo.1983). But there is no "wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *accord Keohane,* 882 P.2d at 1299; *Burns,* 659 P.2d at 1358 ("A speaker is not accorded free speech protection for attacks on an individual's reputation interests by framing the attack as 'opinion.'"). So the fact a statement may be prefaced by a phrase such as "In my opinion" or "I believe" is not determinative of whether the statement is one of pure opinion. *See Milkovich,* 497 U.S. at 18–19, 110 S.Ct. 2695; *Burns,* 659 P.2d at 1360. To be entitled to full constitutional protection, the statement must not contain a provably false factual connotation or, if it does, it must not be such that it could reasonably be interpreted as stating actual facts. *Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695; *Keohane,* 882 P.2d at 1299; *NBC Subsidiary,* 879 P.2d at 10.

¶ 31 As this implies, the inquiry whether a statement is one of pure opinion has two parts. First, the court must determine if the statement is "sufficiently factual to be susceptible of being proved true or false." *Milkovich,* 497 U.S. at 21, 110 S.Ct. 2695; *accord Keohane,* 882 P.2d at 1299; *NBC Subsidiary,* 879 P.2d at 10. Second, the court must determine "whether reasonable people would conclude that the assertion is one of fact." *Keohane,* 882 P.2d at 1299 (citing *Milkovich,* 497 U.S. at 21, 110 S.Ct. 2695); *accord NBC Subsidiary,* 879 P.2d at 10.

¶ 32 We review the district court's decision whether a statement is one of pure opinion de novo. *Keohane,* 882 P.2d at 1299 n.8; *NBC Subsidiary,* 879 P.2d at 11; *see Milkovich,* 497 U.S. at 17, 110 S.Ct. 2695.

b. Application

¶ 33 We conclude that Mr. Stow's statement contained a provably false factual connotation—that the Facebook post was a threat directed at him. The truth or falsity of that assertion could be determined from the language of the post itself and from investigation of the surrounding circumstances. (Indeed, the APD officer conducted such an investigation and concluded that the statement was neither a threat nor directed at Mr. Stow.) A threat to harm an individual may subject one to criminal prosecution. *See* § 18–3–206, C.R.S.2013. Were the existence of such a threat not capable of being proved, criminal prosecution would not be permissible.

¶ 34 To determine whether reasonable people would conclude that the assertion is one of fact we consider: "(1) how the assertion is phrased; (2) the context of the entire statement; and (3) the circumstances surrounding the assertion, including the medium through which the information is disseminated and the audience to whom the statement is directed." *Keohane,* 882 P.2d at 1299; *accord NBC Subsidiary,* 879 P.2d at 11.

¶ 35 This particular statement was phrased in terms of what Mr. Stow felt, and the district court appears to have given virtually

dispositive weight to that fact. But considered in context, it is clear that the statement was part of an effort by Mr. Stow to convince the APD officer that he had in fact been threatened. He related to the officer a number of allegations concerning past events, including the dissolution proceedings, other perceived threats, and prior reports he had made to police. He told the officer that "he had always had a 'gut feeling' that [Ms. Lawson's] life would be easier without him and that she would possibly want him 'dead.'" Further, Mr. Stow made the statement to a police officer, with the apparent expectation that the police would regard the statement as a threat and investigate.

¶ 36 Considering the language of the statement and the relevant context, we conclude that reasonable people would conclude that Mr. Stow was asserting as a fact that the Facebook post was a threat directed at him.

¶ 37 Because the district court has not yet determined whether the factual connotation conveyed by the statement—that the Facebook post was a threat directed at Mr. Stow (rather than whether he "felt" the post was a threat directed at him)—was false, we must remand the case for the court to make that determination. In so doing, the court must apply the clear and convincing burden of proof.[4]

## B. Negligence Per Se

¶ 38 As noted, the Lawsons asserted a negligence per se claim based on Mr. Stow's alleged violation of section 18–8–111, which provides as relevant here that one who "makes a report ... to law enforcement authorities of a crime or other incident within their official concern when he knows that it did not occur" commits a misdemeanor. § 18–8–111(1)(b), (2). The Lawsons alleged that Mr. Stow violated that provision when he made the report about the Facebook post to APD.[5]

¶ 39 The district court ruled, however, that a private individual may not assert a negligence per se claim based on a violation of the false reporting statute because the statute "was intended to prevent emergency services and law enforcement agencies from wasting resources on false alarms and false reports of criminal activity ...; it is not intended to protect individuals such as the [Lawsons]." The court ruled in the alternative that, even if a negligence per se claim could be premised on the statute, the Lawsons had not proved that Mr. Stow violated the statute or that any such violation proximately caused their alleged injuries.

¶ 40 On appeal, the Lawsons address only the district court's first conclusion in any meaningful way. They argue at length that, as a legal matter, a violation of the false reporting statute constitutes negligence per se. But they only obliquely address the district court's alternative conclusions that they had not proved that Mr. Stow violated the statute or that their alleged damages were proximately caused by the alleged violation, stating in purely conclusory fashion: "Having proved by a preponderance of the evidence that the defendant made a false report about them to the APD and having proved [Mr. Stow's] conduct caused them at least nominal damages, the [Lawsons] were entitled to a verdict in their favor on the negligence per se claim."

¶ 41 Ordinarily, a party's failure to present a cogent argument contesting a court's alternative basis for judgment requires us to affirm the judgment. *See IBC Denver II, LLC v. City of Wheat Ridge*, 183 P.3d 714, 717–18 (Colo.App.2008) (a party's failure on appeal to challenge all alternative grounds for judgment requires affirmance of the judgment); *Castillo v. Koppes–Conway*, 148 P.3d 289, 291–92 (Colo.App.2006) (appellate court will not consider a conclusory assertion of error unaccompanied by a cogent argument). But the district court's alternative rulings here were based on its determination that Mr. Stow's statement to the APD

---

4. The Lawsons request a new trial in the event we reverse. That is not the appropriate remedy. The Lawsons have had their chance to prove their claims. The only thing remaining to be done is for the district court to apply correct legal standards to the evidence in the record in making its findings.

5. The Lawsons did not allege a duty under the common law.

was one that did not include a provably false fact. As discussed above, we disagree with that conclusion. Accordingly, we will address the Lawsons' legal argument that a violation of section 18–8–111(1)(b) may support a claim for negligence per se.

### 1. Governing Law and Standard of Review

¶ 42 "[N]egligence per se occurs when the defendant violates a statute adopted for the public's safety and the violation proximately causes the plaintiff's injury." *Scott v. Matlack, Inc.,* 39 P.3d 1160, 1166 (Colo.2002); *see Lyons v. Nasby,* 770 P.2d 1250, 1257–58 (Colo.1989); *Largo Corp. v. Crespin,* 727 P.2d 1098, 1107–08 (Colo.1986). But "we will not infer a private right of action based on a [statutory] violation unless we discern a clear legislative intent to create such a cause of action." *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 923 (Colo. 1997).

¶ 43 Section 18–8–111(1)(b) does not expressly provide for a private right of action. Therefore, we consider three factors to determine whether the General Assembly intended to allow one: (1) whether the plaintiff is within the class of persons intended to be benefitted by the statute; (2) whether the General Assembly intended, albeit implicitly, to create a private right of action; and (3) whether allowing such an action would be consistent with the purpose of the legislative scheme. *Id.*

### 2. Analysis

¶ 44 Part 1 of article 8 of title 18 of the Colorado Revised Statutes, which includes section 18–8–111(1)(b), identifies criminal offenses relating to the obstruction of public justice. We agree with the district court that the primary purpose of section 18–8–111(1)(b) is to conserve finite law enforcement resources – that is, to deter individuals from causing such resources to be wasted. Though the statute relates to public safety to some extent (in the sense that conserving public resources allows authorities to devote more resources to investigating complaints

that have merit), its purpose is not as directly related to public safety as, say, criminal statutes which prohibit conduct causing harm to persons or property.

¶ 45 We also conclude that the Lawsons are not within the class of persons the statute is intended to protect. The victims of offenses under section 18–8–111(1)(b) are law enforcement entities. *Cf. Bittle v. Brunetti,* 750 P.2d 49, 57–58 (Colo.1988) (no negligence per se claim based on violation of snow removal ordinance; though ordinance benefitted pedestrians indirectly, primary purpose was to assist the municipality in performing its duty to keep public sidewalks safe); *Dunbar v. Olivieri,* 97 Colo. 381, 384–85, 50 P.2d 64, 65–66 (1935) (no negligence per se claim based on violation of municipal ordinance prohibiting burning bonfires during certain hours; purpose of ordinance was to conserve fire department resources), *overruled in part on other grounds by Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971); *Liebelt v. Bob Penkhus Volvo–Mazda, Inc.,* 961 P.2d 1147, 1150 (Colo.App.1998) (no negligence per se claim based on violation of "dealer-plate" statute; purpose was to provide for collection of tax and distribution of resulting revenue).

¶ 46 Finally, we also conclude that public policy weighs against implying a private right of action. As discussed, reports of criminal conduct to law enforcement authorities implicate free speech concerns. Allowing a cause of action for negligence per se based on such reports would risk creating liability for constitutionally protected speech where no such liability would be possible under the law of defamation.

¶ 47 Thus, we conclude that a violation of section 18–8–111(1)(b) cannot serve as the basis for a negligence per se claim. *See McNeil Pharm. v. Hawkins,* 686 A.2d 567, 580 (D.C.1996) (violation of federal false statement statute, 18 U.S.C. § 1001, is not negligence per se); *Daas v. Pearson,* 66 Misc.2d 95, 319 N.Y.S.2d 537, 540–41 (N.Y.Sup.Ct.) (violation of state false reporting statute is not negligence per se), *aff'd,* 37 A.D.2d 921,325 N.Y.S.2d 1011 (1971).[6] The

---

**6.** We stress that our holding in this regard is limited to false reporting under section 18–8–

111(1)(b).

district court therefore properly entered judgment for Mr. Stow on that claim.[7]

### III.   Conclusion

¶ 48 The judgment is reversed as to the defamation claim to the extent that claim is premised on Mr. Stow's statement to the APD officer about the Facebook post, and the case is remanded to the district court for further findings on that claim.   In all other respects, the judgment is affirmed.

JUDGE FOX and JUDGE NAVARRO concur.

**7.**   The Lawsons cite *Kennedy v. Colo. RS, LLC,* 2012 WL 366546 (D.Colo. No. 10–cv–02240–WYD–MJW, Feb. 1, 2012) (unpublished order), for the proposition that a violation of section 18–8–111 can support a negligence per se claim. They misconstrue the case.   The court denied summary judgment on the plaintiff's wrongful discharge claim, which was based in part on the allegation that the plaintiff's employer had terminated him for refusing to lie to police.   The plaintiff asserted that lying to the police would have violated section 18–8–111.   No negligence per se claim was asserted and there was no alleged violation of section 18–8–111 by anyone.