The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 12, 2026

**2026COA13**

**No. 25CA0776, *Wilburn v. Guthrie* — Courts and Court
Procedure — Regulation of Actions and Proceedings — Action
Involving Exercise of Constitutional Rights — Anti-SLAPP —
Accusation of Crime**

In this action under the anti-SLAPP statute, § 13-20-1101,
C.R.S. 2025, a division of the court of appeals addresses the line
between fact and opinion when one person publicly accuses another
of committing a crime.  The division holds that if the speaker fully
and accurately discloses the conduct on which the accusation is
based, the speaker's characterization of that conduct as a crime is a
constitutionally protected opinion that cannot sustain a defamation
claim.  In contrast, when the speaker does not fully and accurately
disclose the factual context for the accusation, or when the speaker
asserts or implies that the other person has done something they
have not, the statement may be an actionable assertion of fact.

COLORADO COURT OF APPEALS     **2026COA13**

Court of Appeals No. 25CA0776
El Paso County District Court No. 24CV32374
Honorable Gregory R. Werner, Judge

Derrick Wilburn,

Plaintiff-Appellee,

v.

Bernadette Guthrie,

Defendant-Appellant.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

Announced March 12, 2026

First & Fourteenth PLLC, Andrew M. Nussbaum, Robert J. Bucknam, Colorado Springs, Colorado, for Plaintiff-Appellee

Civil Rights Litigation Group, LLP, Edward C. Hopkins Jr., Denver, Colorado, for Defendant-Appellant

¶ 1    The line between fact and opinion can grow blurry when one person accuses another — particularly a public figure — of committing a crime.  On one hand, it has been stated categorically that an accusation that someone committed a crime is per se defamatory.  *See Arrington v. Palmer*, 971 P.2d 669, 671 (Colo. App. 1998).  On the other hand, an opinion based on disclosed facts is constitutionally protected.  *See NBC Subsidiary (KCNC-TV), Inc. v. Living Will Ctr.*, 879 P.2d 6, 12 (Colo. 1994).  And sometimes, people have different opinions about whether a particular act is a crime.

¶ 2    The distinction lies in what about the accusation is alleged to be false.  If the speaker asserts or implies that the other person has done something they have not, that is a factual assertion that can support a defamation claim.  But if instead the speaker fully and accurately discloses what the other person has done, the speaker's *characterization* of that act as a crime is a protected opinion.

¶ 3    This case involves both kinds of statements.  After plaintiff, Derrick Wilburn, read explicit book passages at a public forum in the presence of children, defendant, Bernadette Guthrie, publicly (and repeatedly) accused him of being a "child predator" and committing crimes against children — sometimes disclosing the

relevant context and sometimes not. Wilburn sued Guthrie for defamation and outrageous conduct, and Guthrie moved to dismiss the claims under Colorado's anti-SLAPP[1] statute, § 13-20-1101, C.R.S. 2025, primarily on the ground that her statements were protected opinions. The district court denied the motion to dismiss.

¶ 4 We affirm that denial. But in doing so, we conclude that many of the allegedly defamatory statements — those in which Guthrie offered her subjective characterization of a factually accurate account — are constitutionally protected statements of opinion that cannot support Wilburn's claims. Thus, while Wilburn's claims can proceed, they must be narrowed in accordance with this opinion.

## I. Background

¶ 5 While running for a seat on a local school board, Wilburn participated in a public forum at a middle school attended by Guthrie and her then-eleven-year-old daughter. At the forum, a moderator asked candidates about issues affecting the school district. One such question addressed "banned books": "How does

---

[1] "SLAPP" stands for "strategic lawsuit against public participation." *Salazar v. Pub. Tr. Inst.*, 2022 COA 109M, ¶ 1 n.1.

the school board ensure that banned books do not negatively impact students' access to diverse educational literature?"

¶ 6 In response, Wilburn — who believed that certain books should not be available in public schools — read excerpts from three books that he said were available in school libraries in the district. He prefaced his reading from the books with the following:

> I do not curse. I'm going to speak some words now that have not come from my lips in 30 years, and I apologize in advance, ladies and gentlemen, for what you're about to hear. These are books currently available in [the school district's] libraries. Please forgive me in advance.

¶ 7 He then read the following passage:

> Title is *Push*. Page 32. "Daddy put his peepee smelling thing in my mouth, my pussy, but never hold me. I see when he first created pink dress dirty sperm stuff on it. About three months after baby was born, I'm twelve when this happens, mama slapped me hard. Then she picked up a cast-iron skillet and she hit me so hard I fall back on the floor. Then she kicks me in the ribs, and she say, 'Thank you Miz Claireece Precious Jones for fucking my husband you nasty little slut! Fat cunt bucket slut! Nigger pig bitch! All you tell them motherfuckers at the damn hospital? I should kill you,' she screamed at me."

¶ 8     After reading passages from two other books,[2] Wilburn continued:

> If you want your children to have access to and read this material, that's none of my business.  But as an independent taxpayer in this district, don't ask me to pay for it.  As a member of this board of directors, don't ask me to force you to pay for it because the answer to both is no.

¶ 9     According to Guthrie, her daughter was "shocked" by the readings and "immediately burst into tears" after the forum. Guthrie characterizes Wilburn's reading of these passages as the "public performance of pornography at a student-led event."

¶ 10    Wilburn was elected to the school board the next month.  In the months that followed, Guthrie made several public statements criticizing Wilburn's conduct at the forum and accusing him of engaging in sexually predatory and other criminal behavior.

    A.    November School Board Meeting and Police Report

¶ 11    Shortly after Wilburn's election to the school board, Guthrie spoke at a school board meeting about his comments at the public

---

[2] We do not quote the other excerpts because Guthrie's public statements center primarily on the first excerpt, and the specific content of the excerpts has no bearing on our analysis.

forum. Wilburn attended the meeting, and afterward, the two had a verbal altercation outside. According to Guthrie, Wilburn initiated the confrontation by approaching her from behind and addressing her about her comments at the meeting. According to Wilburn, Guthrie approached him first, screaming and cursing at him and accusing him of being a predator as he walked to his car.

¶ 12    After this incident, Guthrie filed a police report in which she described the public forum and accused Wilburn of being a "child predator" for reading the explicit passages in front of children. She claimed that because Wilburn had previously referred to one of the books he read from as "pornography" — which she defined as "material used for arousal" — that meant he had "read small children material that arouses him." She asserted that Wilburn's conduct at the forum amounted to the crime of "obscenity."

¶ 13    Guthrie also reported the altercation after the school board meeting, which she said constituted the crimes of harassment and retaliation against a witness or victim. She told police that Wilburn had approached her from behind "in an intimidating fashion and started yelling at [her] for [her] public comments." Wilburn denied

5

approaching Guthrie and claimed that Guthrie had "berate[d] and repeatedly threaten[ed] [him] in an extremely aggressive fashion."

¶ 14 The investigating officer concluded there was no evidence that Wilburn had committed any crimes, either at the public forum or after the school board meeting. As to the forum, the officer found that there was no evidence that Wilburn had intended to promote obscene material to minors. As to the board meeting incident, the officer found that Wilburn had not followed Guthrie or intended to harass her. The officer explained these findings to Guthrie.

B. Public Comments and Social Media Postings

¶ 15 For several months after the public forum, Guthrie made public comments at school board meetings and on social media accusing Wilburn of being a "child predator," a "pervert," and "a danger to children." In many of these comments, Guthrie recounted with varying degrees of detail what Wilburn had done at the forum that led her to these accusations. In others, she simply called Wilburn a child predator without explaining why. Guthrie asserted that Wilburn's conduct was criminal and that, "if he's convicted of the crime he committed[,] he will have to register as a sex offender and will not be eligible to hold a board director seat."

6

¶ 16    Guthrie also shared her account of the school board meeting incident on social media, posting that Wilburn had "followed [her] out of a . . . school board meeting . . . late at night into a dark parking lot where he harassed and tried to intimidate [her]." She noted that a police report had been filed as a result of the incident.

## C.    Petition for Prosecution

¶ 17    Four months after the public forum, a group of parents of students in the school district submitted a petition to the district attorney, contending that Wilburn had committed the crime of obscenity and requesting an investigation into his conduct. The petition described the public forum, including Wilburn's reading of the passages, and provided a link to a video of the event.

¶ 18    Guthrie wrote a letter in support of the petition, which likewise included a link to a video of the forum. Her letter largely mirrored the statements in her police report. It concluded by asserting that the school district "now has a child predator sitting on their board."

## D.    Colorado Association of School Boards Communications

¶ 19    A few days after the parent group submitted the petition, Guthrie forwarded a news release about the petition to the Colorado Association of School Boards (CASB) and asked, "[W]hat happens if

7

a sitting school board director is under investigation for sexual crimes against minor children?"  The executive director of CASB responded that "[t]here isn't recourse if a school board member is under investigation," but "if they are found guilty, they are removed from their seat and there would be a vacancy."  Guthrie replied:

> If a board came to you with this situation, would you advise them for the board member under investigation to limit their time around children/schools?  It's concerning to say the least to have someone who is being investigated for sex crimes against children to have full access to schools and students.

¶ 20    The executive director responded: "Yes, I would advise the board member to exercise caution, but we always have to be mindful that allegations are not findings, so the judicial and administrative processes need to be followed."

¶ 21    After this email exchange, Guthrie posted a comment on Wilburn's social media page attributing the following quote to the CASB: "We would advise the . . . school board to exercise caution in allowing Mr. Wilburn access to children while there is a pending investigation into his behavior around children."  She also made a public comment at a school board meeting that the executive

director of the CASB had advised the "board to exercise extreme caution in allowing an accused board member access to children."

### E.    Complaint and Motion to Dismiss

¶ 22    Wilburn sued Guthrie for defamation and outrageous conduct based on her statements.  He alleged that Guthrie had falsely stated that Wilburn (1) "is a child predator who has violated children, is sexually aroused by exposing children to obscene materials, and is a danger to children"; (2) "is under investigation . . . for his various crimes"; and (3) "harassed and retaliated against [Guthrie]."

¶ 23    Guthrie filed a special motion to dismiss under the anti-SLAPP statute.  *See* § 13-20-1101(3)(a).  She argued that (1) her statements accusing Wilburn of crimes against children and harassment were constitutionally protected opinions; (2) her statements that Wilburn was under investigation were not defamatory; and (3) Wilburn could not prove by clear and convincing evidence that Guthrie acted with actual malice.

¶ 24    The district court denied Guthrie's motion.  In doing so, it rejected Guthrie's claim that her statements were protected opinions, identifying several that it regarded as factual assertions capable of being proved true or false.  The court also determined

that a jury could reasonably find that Guthrie made the statements with actual malice. And it concluded that the nature of the statements was such as to sustain the outrageous conduct claim.

## II.    Anti-SLAPP Legal Framework

¶ 25    The purpose of the anti-SLAPP statute is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government," while at the same time protecting the right to "file meritorious lawsuits for demonstrable injury." § 13-20-1101(1)(b). It does so by creating a special motion to dismiss, which allows the district court to "make an early assessment about the merits of claims brought in response to a defendant's petitioning or speech activity." *Salazar v. Pub. Tr. Inst.*, 2022 COA 109M, ¶ 12; *see* § 13-20-1101(3)(a).

¶ 26    When a defendant shows that a claim arises from an act "in furtherance of the [defendant's] [constitutional] right of petition or free speech . . . in connection with a public issue" — as Wilburn concedes his claims do — the claim must be dismissed unless the plaintiff establishes "a reasonable likelihood" of prevailing on the claim. § 13-20-1101(3)(a); *see Lind-Barnett v. Tender Care Veterinary Ctr., Inc.*, 2025 CO 62, ¶¶ 22-23. We review the district

court's resolution of that question de novo. *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 64 (*Coomer I*).

¶ 27 Guthrie argues that the district court erred by applying the oft-cited legal standard that, in determining whether a plaintiff has shown a reasonable likelihood of success, the court "accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." *L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 23 (citation omitted). Citing the concurring opinions in *Coomer v. Salem Media of Colorado, Inc.*, 2025 COA 2 (*Coomer II*) (Tow, J., specially concurring), and *Jogan Health, LLC v. Scripps Media, Inc.*, 2025 COA 4 (Berger, J., specially concurring), Guthrie contends that this standard is irreconcilably inconsistent with the standard set forth in *Salazar*. She urges us to "resolve" this split by eschewing *L.S.S.* and applying *Salazar*.[3]

¶ 28 *Salazar* was the first published case to address the standard for resolving a special motion to dismiss under the anti-SLAPP

---

[3] We, of course, cannot "resolve" the purported split. As a divisional court, the most we could do is pick a side. *See Chavez v. Chavez*, 2020 COA 70, ¶ 13 ("[D]ivisions are not bound by the decisions of other divisions . . . ."). Only the supreme court can settle an interdivision split. *See Willhite v. Rodriguez-Cera*, 2012 CO 29, ¶ 9 ("[T]his court is the final authority on questions of Colorado law.").

11

statute. In that case, the division held that the court "neither simply accept[s] the truth of the [plaintiff's] allegations nor make[s] an ultimate determination of their truth" but instead "assess[es] whether the allegations and defenses are such that it is reasonably likely that a jury would find for the plaintiff." *Salazar*, ¶ 21.

¶ 29     About a month later, the division in *L.S.S.* announced the standard that the district court applied in this case: "'[T]he court does not weigh evidence or resolve conflicting factual claims' but simply 'accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.'" *L.S.S.*, ¶ 23 (citation omitted). Since *L.S.S.*, divisions of this court have universally applied this standard (often alongside *Salazar*). *See Jogan Health*, ¶ 14; *Coomer II*, ¶ 18; *Coomer I*, ¶¶ 66-69; *Anderson v. Senthilnathan*, 2023 COA 88, ¶ 11; *Creekside Endodontics, LLC v. Sullivan*, 2022 COA 145, ¶ 26.[4]

---

[4] The only case we are aware of that did not apply the standard in *L.S.S. v. S.A.P.*, 2022 COA 123, is *Tender Care Veterinary Center, Inc. v. Lind-Barnett*, 2023 COA 114, *rev'd*, 2025 CO 62. In that case, the division acknowledged the conflicting standards but did not decide which of the approaches was correct. *Id.* at ¶ 14 n.2.

¶ 30     But the special concurrences in *Coomer II* and *Jogan* rejected the *L.S.S.* standard, viewing it as inconsistent with both *Salazar* and the anti-SLAPP statute.  *See Coomer II*, ¶ 120 (Tow, J., specially concurring); *Jogan Health*, ¶ 56 (Berger, J., specially concurring).  They asserted that rather than accepting the plaintiff's evidence as true, the court should weigh the evidence — at least to an extent — to assess whether the claim is likely to succeed.  *See Coomer II*, ¶ 117 (Tow, J., specially concurring); *Jogan Health*, ¶¶ 64-67 (Berger, J., specially concurring).  Guthrie asks us to do the same.

¶ 31     Initially, we do not view *Salazar* and *L.S.S.* as "irreconcilably inconsistent."  *Coomer II*, ¶ 119 (Tow, J., specially concurring).  As the division explained in *Coomer I*, *Salazar* says that a court should not accept the truth of the plaintiff's *allegations*.  *Coomer I*, ¶ 67 (citing *Salazar*, ¶ 21).  *L.S.S.* does not say otherwise.  It says that a court should accept the truth of the plaintiff's *evidence*.  *L.S.S.*, ¶ 23.  Thus, *Salazar* and *L.S.S.* can be read together to mean that "while we do not necessarily accept the plaintiff's *allegations* as true, we do accept as true the plaintiff's *evidence*" — including evidence contained in the plaintiff's affidavit.  *Coomer I*, ¶¶ 68-69.

13

¶ 32     But even if *Salazar* and *L.S.S.* are somewhat inconsistent, we need not add our voice to the percolating debate for two reasons. First, to the extent Guthrie argues that the *district court* erred by applying the *L.S.S.* standard, she did not preserve the issue. In her special motion to dismiss, Guthrie cited *L.S.S.* several times, including for the proposition that the court must determine "whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." *L.S.S.*, ¶ 23 (citation omitted); *see also Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) ("Prima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact."). She also asserted, again citing *L.S.S.*, that the court should look for guidance to California law, from which the *L.S.S.* standard was drawn. *See L.S.S.*, ¶¶ 20, 23. In doing so, Guthrie gave no indication that *L.S.S.* was inconsistent with *Salazar* or otherwise incorrect. Nor did she argue, as she does on appeal, that the court should weigh the evidence. We generally do not consider unpreserved arguments in civil cases. *See Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18.

¶ 33    Second, while we must nevertheless apply the correct legal standard in conducting our own review, the ostensible divide — between accepting the plaintiff's evidence as true and weighing the evidence — makes no difference in this case because there are no pertinent factual disputes. Guthrie does not, for purposes of this appeal, dispute what she said or what Wilburn did.[5] *Cf. Coomer II*, ¶ 127 (Tow, J., specially concurring) (describing scenario in which video evidence refutes plaintiff's affidavit denial). Instead, her appeal turns on whether her statements were protected opinions and whether they are *capable* of being proved true or false. In other words, Guthrie argues that Wilburn has not shown a reasonable likelihood of prevailing on his claims — not because her evidence is stronger than his, but because the claims fail as a matter of law. *See L.S.S.*, ¶ 23; *see also Sall v. Barber*, 782 P.2d 1216, 1218 (Colo. App. 1989) ("The question of whether allegedly defamatory language is constitutionally protected opinion is a matter of law.").

---

[5] The parties do dispute what happened after the board meeting, with Wilburn attesting that he did not follow or harass Guthrie and Guthrie saying he did. But Guthrie did not seek dismissal on the ground that Wilburn's denial was too weak or unsubstantiated to sustain his claims at this stage. *See Jogan Health, LLC v. Scripps Media, Inc.*, 2025 COA 4, ¶ 64 (Berger, J., specially concurring).

¶ 34    Thus, whether we accept Wilburn's evidence as true or weigh the evidence, we end up in the same place. Wilburn read the book excerpts at the public forum, and Guthrie made the challenged statements. Wilburn's claims rise or fall on whether those statements are actionable. That is the question we turn to next.

## III.    Fact or Opinion

¶ 35    Guthrie contends that her statements — particularly those calling Wilburn a "predator" — were nonactionable opinions based on disclosed facts. She asserts that the district court erred by characterizing the statements as factual assertions. We agree in part. Those statements that Guthrie coupled with a factually accurate description of the conduct on which they were based constitute protected opinion. Statements that were untethered to that context, however, are sufficiently factual to support a claim.

### A.    The Line Between Fact and Opinion

¶ 36    Statements of pure opinion are constitutionally protected and not actionable as defamation. *Lawson v. Stow*, 2014 COA 26, ¶ 30. But even if a statement is framed as an opinion, it may constitute an actionable assertion of fact if (1) it contains or implies a statement that is susceptible of being proved true or false, and (2) a

16

reasonable person would conclude the assertion is one of fact. *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994); *NBC Subsidiary (KCNC-TV)*, 879 P.2d at 10. To determine how a reasonable person would interpret the statement, we consider how the assertion is phrased, the context of the statement as a whole, and the surrounding circumstances. *Keohane*, 882 P.2d at 1299.

¶ 37    A statement of opinion may be actionable as defamation if it is based on false or undisclosed facts. *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1360 (Colo. 1983). But if the factual context for the opinion is fully and accurately disclosed, the speaker's subjective characterization of those facts may constitute a constitutionally protected opinion. *See NBC Subsidiary (KCNC-TV)*, 879 P.2d at 12; *Burns*, 659 P.2d at 1359; *see also Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1159-60 (9th Cir. 2021) (holding that statement that news outlet was "paid Russian propaganda" was opinion where speaker disclosed factual basis for claim).

¶ 38    We review de novo whether a statement is a protected opinion or an assertion of fact. *Lawson*, ¶ 32.

B.     Guthrie's Characterizations of Undisputed Facts

¶ 39     We agree with Guthrie that several of her allegedly defamatory statements — specifically, those in which she described Wilburn's conduct at the forum and expressed her view that it was criminal or otherwise improper — are protected opinion.  In these statements, Guthrie made clear that her accusations were based on her interpretation of the disclosed facts, not on some other undisclosed criminal act that Wilburn committed.  *See NBC Subsidiary (KCNC-TV)*, 879 P.2d at 12 (holding that the defendant's assertion that the plaintiff's product was a "scam" was an opinion because it was "based on facts disclosed to the viewer"); *Burns*, 659 P.2d at 1360-61 (distinguishing statements in which the context was "fully and clearly disclosed" from those that implied the reporter had "inside knowledge of the facts which would support her charge").

¶ 40     For example, in both the police report and the petition for prosecution, Guthrie began her statements by describing Wilburn's reading of the passages at the public forum.  She also included a link to a video of the forum and identified the pertinent portions of the video.  She then asserted that, *by reading the passages aloud*, Wilburn had "violated the rules and norms" of the forum and that

18

*this* conduct was "criminal behavior" because Wilburn had previously referred to the book as pornography. And she said that Wilburn was a "child predator" *for reading the quoted excerpts*.

¶ 41    Many of Guthrie's comments at school board meetings and in social media posts were in the same vein. Her first post was similar to her statements in the police report and the petition, quoting the language Wilburn read, linking to the video, and asserting that he had "violated the set rules and decorum of the forum, broke [the] district code of conduct, and . . . traumatize[d] the young children in the audience." And in many other public comments, Guthrie explicitly tied her assertions that Wilburn was a "predator," a "pervert," and a "danger to children" to his readings at the forum.

¶ 42    Given the context and phrasing of these statements, no reasonable person would understand them as assertions of any fact other than that Wilburn had read from the books at the forum. *See Keohane*, 882 P.2d at 1299. To the extent Guthrie expressed her view that his doing so was criminal, predatory, or otherwise improper, a reasonable listener would understand these accusations as Guthrie's opinion of Wilburn's behavior. *See id.* And Guthrie disclosed the facts that "would allow an average

19

listener to evaluate" that opinion for themselves.  *Burns*, 659 P.2d at 1360; *see also NBC Subsidiary (KCNC-TV)*, 879 P.2d at 12 ("Viewers were in a position to evaluate [the speaker's] views, and were free to form a judgment . . . that differed from his.").

¶ 43     We recognize that "accusations of criminal activity, 'even in the form of opinion, are not constitutionally protected.'" *Keohane*, 882 P.2d at 1304 (citation omitted); *see also Arrington*, 971 P.2d at 671 ("A statement is defamatory *per se* if it imputes a criminal offense."). But there is a difference between falsely accusing someone of committing a criminal act and expressing the view that an act the person indisputably undertook violates the law.  *See Keohane*, 882 P.2d at 1304 (explaining that allegations of illicit behavior expressed as an opinion may support a defamation claim "if there is no adequate exposition of the underlying facts"); *see also Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1169 (N.Y. 1993) ("[A]ccusations of criminality could be regarded as mere hypothesis and therefore not actionable if the facts on which they are based are fully and accurately set forth and it is clear to the reasonable reader or listener that the accusation is merely a personal surmise built upon

those facts."). We decline to hold that a person may be liable for defamation for calling a public figure's public acts a crime.

¶ 44 The undisputed nature of the underlying facts sets this case apart from others in which Colorado courts have treated an accusation of criminal activity as an assertion of fact. In *Coomer I*, for example, the plaintiff denied the defendants' underlying factual assertion that he took steps to undermine the election results. *See Coomer I*, ¶¶ 135, 138. Similarly, in *Lawson*, there was a factual dispute as to whether the plaintiff had threatened the defendant. *See Lawson*, ¶ 37. And in *Keohane*, the defendant did not even assert that the plaintiff had actually taken a bribe, as his statements had implied. *See Keohane*, 882 P.2d at 1303.

¶ 45 In contrast, Wilburn does not dispute that he read the quoted book passages at the forum or that children were present when he did so. He only disputes Guthrie's characterization of that act. We conclude that as long as Guthrie fully disclosed the factual basis for that characterization, the characterization itself is a protected opinion. *See id.* at 1304; *Burns*, 659 P.2d at 1361.

¶ 46 We also conclude that certain of Guthrie's other statements are not "sufficiently factual to be susceptible of being proved true or

21

false." *Keohane*, 882 P.2d at 1299 (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990)). Such statements include Guthrie's alleged assertions that (1) Wilburn's actions were "grossly perverted and lewd"; (2) Wilburn "raped [her] child's mind"; (3) Wilburn is a "sexual deviant" and a "pervert"; and (4) Wilburn is "the biggest criminal" in the school district. These statements are the kind of subjective judgments and rhetorical hyperbole that cannot support a defamation claim. *See NBC Subsidiary (KCNC-TV)*, 879 P.2d at 12-13; *Coomer I*, ¶ 133 (holding that statements calling the plaintiff "unhinged," a "lunatic," and "evil" "undoubtedly *would* qualify as protected opinion or hyperbole").

### C.    Factual Assertions

¶ 47    Although Wilburn's claims may not be premised on the categories of statements described above, we have identified four categories of statements that are sufficiently factual to support a claim: (1) accusations of criminal conduct or predatory behavior that are divorced from the factual context for those accusations; (2) Guthrie's claim that Wilburn followed and harassed her; (3) the insinuation that Wilburn was under investigation; and

(4) statements indicating that the CASB had advised the school board to "exercise caution" in allowing Wilburn access to children.

¶ 48    First, unlike the statements described in Part III.B, some of Guthrie's social media posts — at least as they are presented (and admitted) in the complaint — do not include any context for her accusations of criminal and predatory behavior by Wilburn.[6]  In one post, Guthrie asserted, without more, that her daughter was "the victim of one of the school board members who is a child predator." In another, Guthrie said, "[I]f [Wilburn is] convicted of the crime he committed[,] he will have to register as a sex offender and will not be eligible to hold a board director seat."  Guthrie made other

---

[6] The analysis of these statements could change to the extent their context is apparent from surrounding discussion not detailed in the complaint.  But Guthrie did not identify any such additional context in her motion, and we are limited to "the pleadings and supporting and opposing affidavits."  § 13-20-1101(3)(b), C.R.S. 2025.

23

comments baldly claiming that Wilburn had engaged in "predatory behavior" and that there was a "child predator" on the board.[7]

¶ 49    Without the context for these accusations, they could reasonably be understood to imply that Wilburn had committed an unspecified criminal act against children — a claim that is "sufficiently factual to be susceptible of being proved true or false." *Keohane*, 882 P.2d at 1299 (citation omitted); *see also Coomer I*, ¶ 90 ("[W]e must consider . . . statements in context to determine how a reasonable person would have understood them."). Opinions that "imply the existence of an undisclosed defamatory factual predicate may support" a defamation claim. *Burns*, 659 P.2d at 1360. And given the declarative and unqualified nature of the statements, they could reasonably be understood as literal assertions of fact rather than rhetorical hyperbole. *See Lane v. Ark. Valley Publ'g Co.*, 675 P.2d 747, 751 (Colo. App. 1983).

---

[7] We do not exhaustively catalogue each of the more than twenty statements set forth in the complaint. *See Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 91 n.12 (*Coomer I*) ("Absent a specific challenge, we need not separately parse each statement . . . ."). Instead, we address them by category — those that disclosed the factual context and those that did not — and provide examples to guide further proceedings in the district court.

¶ 50    In other social media posts, the limited context Guthrie provided for her statements was glaringly incomplete.  For example, in one post, Guthrie said that Wilburn had referred to the book he read as "p[o]rn," which she defined as "material used for purpose of arousal," and then leaped from there to the conclusion that Wilburn "read material that arouses him to little kids."  Unlike the police report, where Guthrie posed the same syllogism, she did not include a link to the video of the forum or otherwise disclose Wilburn's prefatory and concluding remarks that made clear that he was *not* reading the book for purposes of sexual gratification.  Nor did she specify what the book was.  Without this critical context, this post too could have misled a reasonable reader as to what had actually occurred.  *See Keohane*, 882 P.2d at 1303 (holding that statement was an assertion of fact where a reasonable person could have believed that it was based on undisclosed defamatory facts).

¶ 51    Second, Guthrie's statements that Wilburn followed and harassed her are factual assertions and would reasonably be understood as such.  As in *Lawson*, the context establishes that Guthrie made the statements primarily to convince law enforcement — first the police and then the district attorney — that

25

Wilburn had in fact followed and harassed her, with the intent that they would charge Wilburn with a crime.[8] *See Lawson,* ¶ 35. And although disputed, Guthrie's account is susceptible of being proved true or false. *See id.* at ¶ 33. It either happened or it did not.

¶ 52 Guthrie contends that these statements are opinions because they describe her "subjective perception of a disclosed interaction." But unlike Guthrie's statements about the public forum, the facts of which are not in dispute, this claim is premised on Guthrie's *factual* account of what happened between the parties after the school board meeting. That account does not become an opinion just because it described "what [Guthrie] felt." *Id.* at ¶ 35.

¶ 53 Third, to the extent Guthrie made statements asserting or implying that Wilburn was under investigation, those statements

---

[8] Guthrie also repeated this accusation in a social media post, again in a manner that "could reasonably be interpreted as stating actual facts." *Lawson v. Stow,* 2014 COA 26, ¶ 30.

were factual assertions.[9] Wilburn was either under investigation or he was not, regardless of what Guthrie believed or whether she agreed with law enforcement's decision. Indeed, Guthrie did not argue in the district court or in her opening brief on appeal that this assertion was an opinion. *See Caylao-Do v. Logue*, 2025 COA 42, ¶ 33 ("[W]e do not consider arguments raised for the first time in a reply brief."). Her sole argument in the district court was that it was not defamatory — an argument she does not raise on appeal.

¶ 54    Fourth, Guthrie's posting of the purported CASB quote — which she repeated at a school board meeting — embedded two factual assertions: (1) there was a pending investigation into Wilburn's behavior around children, and (2) the CASB had advised the school board to "exercise caution" in allowing Wilburn access to children. The first of these assertions is addressed above. The

---

[9] As far as we can tell, the only time Guthrie explicitly said Wilburn was under investigation was in the purported CASB quote. In another social media post, she said that *the superintendent* was being investigated while again saying "there's a child predator on the school board" and including a link to a news story about the petition for prosecution with the heading, "Sex Crimes against children for Derrick Wilburn." Given the context and the lack of any argument by Guthrie to the contrary, we assume for purposes of this appeal that this post could reasonably be interpreted as an assertion that Wilburn was under investigation. *See Coomer I*, ¶ 90.

second is likewise "susceptible of being proved true or false": The CASB either issued the claimed advisement or not. *Keohane*, 882 P.2d at 1299 (citation omitted). And framed as a direct quote from the CASB and a statement by the executive director, reasonable people would take as fact that it had. *See id.*

¶ 55 Thus, we conclude that the four categories of statements we outline in this section are sufficiently factual to support a claim.

## IV. Material Falsity

¶ 56 Guthrie next argues that Wilburn failed to establish a reasonable likelihood of proving by clear and convincing evidence that her statements were false. But this argument is entirely derivative of her argument that the statements were opinions. In short, she asserts that her statements were not false because they cannot be proved false and because a reasonable audience would not interpret them as factual assertions. As to the four categories of statements outlined above, we have concluded otherwise.

### A. Preservation

¶ 57 Wilburn asserts that Guthrie did not preserve her challenge to the falsity of the statements. But Guthrie argued in her special motion to dismiss that several of her assertions could not be proved

true or false.  So to the extent this is her argument on appeal, the argument is preserved.  We agree with Wilburn that Guthrie did not make a separate argument that her statements — particularly the statements we describe above — if factual, were true.  But we do not understand her to be making that argument on appeal either.

## B.    Applicable Law

¶ 58    When an allegedly defamatory statement involves a public figure or a matter of public concern, as Guthrie's statements did, the plaintiff must prove by clear and convincing evidence that the statement is materially false.  *Coomer I*, ¶ 86; *Jogan Health*, ¶ 23.

¶ 59    "'Minor inaccuracies do not amount to falsity' so long as the substance or the gist of the statement was true."  *Jogan Health*, ¶ 23 (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991)).  A material falsehood is one that is "likely to cause reasonable people to think 'significantly less favorably' about the plaintiff" than if they knew the whole truth.  *Id.* (citation omitted).  To survive an anti-SLAPP motion to dismiss, the plaintiff must show a reasonable probability that they will be able to prove material falsity by clear and convincing evidence at trial.  *See Coomer I*, ¶ 87.

## C.     Analysis

¶ 60    We have agreed with Guthrie's argument in part.  Those statements in which she called Wilburn's disclosed conduct a crime were protected opinion rather than provably false factual assertions.  But as to the four categories of factual assertions we have identified above, Guthrie does not make any falsity argument that is distinct from the opinion argument we have rejected.

¶ 61    The only additional argument she makes is that Wilburn did not present any evidence of any audience member who in fact interpreted her statements as factual assertions.  But that is not the standard.  To show that a statement is a factual assertion, the plaintiff need not identify a specific person who understood it as such.  The question is what a reasonable person would understand. *See Keohane*, 882 P.2d at 1299.  And we have concluded that a reasonable observer could understand the statements in which Guthrie did not disclose the basis for her accusations as factual assertions that Wilburn had engaged in some other misconduct.

¶ 62    Guthrie does not assert that Wilburn failed to show a reasonable probability of proving that such an accusation — or any other factual assertion we have identified — was materially false.

30

Wilburn expressly denied these accusations in his affidavit, and Guthrie disclaims any allegation that he committed any undisclosed criminal act.  Guthrie argues only that her statements that Wilburn acted inappropriately *by reading the book passages at the public forum* were substantially true.  But to the extent they were adequately contextualized, those statements are nonactionable because they are opinion, not because they are substantially true.

¶ 63     Because Guthrie does not make any argument that the *other* statements are substantially true — or more precisely, that Wilburn has not shown a reasonable probability of proving they are not — we conclude that Wilburn has met his burden on this element.

V.     Outrageous Conduct Claim

¶ 64     The parties agree, as do we, that our resolution of the defamation claim controls the resolution of the outrageous conduct claim as well.  Guthrie's only argument for dismissal of that claim is that the speech underlying the claim is protectable opinion.

¶ 65     A tort claim that arises from an allegedly defamatory statement is subject to the same constitutional limitations as a defamation claim.  *Coomer II*, ¶ 101; *Lewis v. McGraw-Hill Broad. Co.*, 832 P.2d 1118, 1124-25 (Colo. App. 1992); *see also Creekside*

*Endodontics*, ¶ 54 n.8 (noting that an ancillary tort claim "rises and falls with the defamation claim"). Thus, the protected opinions we identify above can no more sustain Wilburn's outrageous conduct claim than they can his defamation claim. And vice versa, the factual assertions can. Because Guthrie makes no other argument for dismissal of the outrageous conduct claim, that claim may proceed to the extent it is premised on those factual assertions.

## VI.    Contentions Raised in Reply Brief

¶ 66     Guthrie raises additional arguments for the first time in her reply brief, including that (1) Wilburn did not meet his burden of proving actual malice; (2) Wilburn did not show causation for his alleged damages; (3) Wilburn's request for injunctive relief is an unlawful prior restraint of speech; and (4) Guthrie's statements to law enforcement are immune from liability. We do not consider arguments raised for the first time in a reply brief. *Caylao-Do*, ¶ 33.

¶ 67     Moreover, other than the argument about malice, Guthrie did not raise these arguments in her special motion to dismiss either. Thus, they are not preserved for appeal, and we decline to consider them on that ground as well. *See Melat, Pressman & Higbie*, ¶ 18.

## VII. Appellate Attorney Fees

¶ 68　　Guthrie requests an award of her appellate attorney fees under section 13-20-1101(4)(a). That subsection provides that "a prevailing defendant on a special motion to dismiss is entitled to recover the defendant's attorney fees and costs." *Id.* It entitles a defendant who prevails on appeal to an award of their appellate attorney fees and costs. *Rosenblum v. Budd,* 2023 COA 72, ¶ 61.

¶ 69　　We deny Guthrie's request. Although we have narrowed Wilburn's claims, we have concluded that both of his claims may proceed. Thus, Guthrie is not a prevailing defendant "because she still faces the same claim[s] she faced before filing the motion." *Salazar,* ¶ 66; *see also Coomer I,* ¶ 223 (holding that narrowing of one claim did not "make [the defendant] a partially prevailing defendant because the defamation claim as a whole survives").

## VIII. Disposition

¶ 70　　The order denying the motion to dismiss is affirmed. But Wilburn's claims may proceed only as to the statements identified in Part III.C of this opinion. The case is remanded to the district court for further proceedings consistent with this opinion.

　　JUDGE GROVE and JUDGE YUN concur.